ALBANY,
Feb. 1810.

FREAR
v.
HARDEN-
BERGH.

FREAR *against* HARDENBERGH.

A. entered on land belonging to B. and without his knowledge or authority, cleared it, made improvements, erected buildings, &c. B. afterwards, agreed by *parol* with A (against whom he had brought an action of ejectment to recover the possession,) that he would sell the land to A. as wild land, or pay him for the improvements he had made. It was held, that though the promise to sell was clearly void by the statute of frauds, yet the promise to pay for the improvements made on the land was not within the statute. But the promise to pay for the work done, and improvements made, without the request of B. was a *nudum pactum*, on which no action could be maintained. There is neither a legal nor moral obligation on the owner of land to pay for the work and labour done upon it, by one who has entered without his consent, or any colour of right, and held the possession against him.

THIS was an action of *assumpsit*. Besides a count for work and labour, a *quantum meruit*, and the usual counts, the declaration contained the following count: " For that whereas the said defendant was indebted to the said plaintiff, in the further sum of 1,000 dollars, &c. for building and erecting on the lands and premises of the defendant, two dwelling-houses, two barns, two barracks, &c. and also for clearing, cultivating, and improving two hundred acres of land, of him the said defendant, and at his special instance and request, he the said defendant, in consideration thereof, afterwards, &c. promised to pay, &c. the said sum of money," &c. There was also a *quantum meruit* on the work and labour, in the last count. Plea *non assumpsit*.

The cause was tried at the *Ulster* circuit, in *October* last.

The counsel for the plaintiff stated, at the trial, that the action was to recover compensation for improvements made by the plaintiff on the defendant's land; and the following evidence was offered and objected to by the defendant's counsel, but admitted by the judge, reserving his opinion as to its competency.

*A. Wiley*, a witness, testified, that about four years ago, and about the time the defendant brought an action of ejectment against the plaintiff for the premises in question, he heard the defendant say, that he meant to use the plaintiff well; and after a verdict had been given for the present defendant in the action of ejectment, that he meant to give the plaintiff a good chance, and to do well by him.

Another witness testified, that before the suit in eject-ment was brought against the plaintiff by the defendant, the defendant said he would pay the plaintiff for the im-provements he had made on the land, or sell it to him as wild land; that he did not want the plaintiff's labour for nothing; that he meant to pay him for his labour, and would not distress him. The land from which the plaintiff was ejected, was about 200 acres, on which the plaintiff had lived 6 or 7 years, and had cleared 60 or 70 acres of the land, and had built a log-house, barn, and hay-house; the plaintiff did not acknowledge the title of the defendant, but held out in defence of his possession, against the action of ejectment.

It also appeared, that the plaintiff had bought the *possession* of one *Schoonmaker*, and moved on to the land; that after the action of ejectment was brought by the defendant against the plaintiff, the plaintiff and de-fendant agreed, that if the defendant recovered in the ejectment suit, he would sell the land to the plaintiff as wild land, or pay him the value of the improvements he had made. This agreement was not, however, re-duced to writing; and the grounds on which the de-fendant's counsel objected to the evidence, and after-wards moved for a nonsuit, were, 1. That if any such agreement was made, it was a special contract, and ought to have been set forth in the plaintiff's declara-tion.

2. That not being in writing, it was within the statute of frauds.

3. That it was a *nudum pactum*, upon which no action could be maintained.

On the evidence given, the judge nonsuited the plaintiff.

The defendant now moved to set aside the nonsuit, for the misdirection of the judge.

*Evertson*, for the plaintiff. 1. If the contract is within the statute of frauds, it must be on the ground that the improvements are part of the land, or are to be considered as land. But the improvements consisted in buildings, which form no part of the realty. They were log-houses not attached to the freehold, and might be removed by a tenant. A contract for the sale of timber growing on land,* or for a growing crop of wheat, need not be in writing.† But the subject of the contract on which this suit is brought, is the work and labour, and not the buildings or improvements. The subject matter of the contract, is not any interest in or' concerning land.

2. Next as to the consideration. It is true that if a consideration be *past*, and the party derives no benefit from it, no action can be maintained. It is a *nudum pactum*. But where a benefit has been derived from the service performed, and the party acknowledges the benefit, and promises compensation, this is sufficient to raise an implied request, so as to support the *assumpsit*. The reason why a consideration wholly past, or executed, will not support a subsequent promise is, that a person ought not to be made liable against his consent, for services rendered without his request.‡ If a person is bound in conscience to make compensation, it is sufficient to support the promise.§ Where a consideration is continuing, it will support an *assumpsit ;* here the consideration was not perfectly executed, or past. The plaintiff continued on the land, bestowing his labour in making improvements.

* Lord *Raym.* 183.
† 1 *Bos.* and *Pull.* 397. *Com. on Contr.* 75.
‡ 1 *Comyn on Contracts,* 20. 23. *Cro. Eliz.* 94.
§ 3 *Boss.* and *Pull.* 249. n. a. 2 *Atkyn,* 83.

The special agreement, referred to a sale of the land, and was no doubt within the statute of frauds ; but four or five years before this suit was brought, and before the action of ejectment, the defendant said he would compensate the plaintiff for his labour. This ought to have been left to the jury, as evidence of a request, so as to support the *assumpsit*. Permission in this case amounts to assent, and an assent on the part of the defendant, is equivalent to a request. The whole evidence ought to have been left to the jury.

*Fisk*, contra. Though the plaintiff originally entered on the land, without any colour or pretence of right, yet he, afterwards, resisted the claim of the defendant, and compelled him to bring an action of ejectment, to recover the possession. This is clearly a *nudum pactum.* The promise of the defendant was purely gratuitous, and without consideration. Every trespasser on land would have an equal claim with the plaintiff, to be compensated for the work and labour he may have performed, in cutting down trees.

Again, this agreement is within the statute of frauds. In *Crosby* v. *Wadsworth*,* it was decided, that a contract for the purchase of wheat growing on land, was within the statute of frauds. And in the case of *Waddington and others* v. *Bristow*,† a written agreement for the sale of hops growing on land, was held not to be an agreement for goods ; but as concerning the land.

SPENCER, J. delivered the opinion of the court. The material objections to the maintenance of the action, urged on the argument, are, that the contract proved is within the statute of frauds, and that it is a *nudum pactum.*

The 4th clause of the 11th section of our statute of frauds, corresponding with the 4th clause of the 4th section of the statute of 29 *Car.* II. c. 3. it is contended, renders the promise in this case nugatory. The words

ALBANY,
Feb. 1810.

FREAR
v.
HARDEN-
BERGH.

* 6 *East*, 607.

† 2 *Bos.* and *Pull.* 452.

are, " that no action shall be brought, whereby to charge any person, upon any contract, or sale of lands, tenements, or hereditaments, or any interest in, or concerning them," &c. One part of the contract proved, is certainly within the terms of this clause of the statute; I refer to that part of the agreement, by which the defendant undertook to sell the land to the plaintiff, as wild land, and so far the promise is rendered nugatory by the statute. The other part of the promise does not, in my apprehension, come within the statute; it was not a contract, or sale of lands, tenements, or hereditaments, or any interest in, or concerning them; but related to the labour only, which had been bestowed on the land, under the denomination of improvements. Was it ever supposed that a parol contract, to pay for work to be done on land, or for what had been done, if at the instance and request of the promiser, was a void undertaking as under the statute. The contract in such case does not go to take from the promiser the land, or any interest in, or concerning it. The statute could have in view to avoid such agreements in relation to lands, as rested in parol, only where some interest was to be acquired, in the land itself, and not such as were collateral, and by which no kind of interest was to be gained, by the agreement, in the land. The defendant's counsel relied much on the case of *Crosby* v. *Wadsworth*, (6 *East*, 609.) If that case be admitted to be law, with respect to which there is doubt, (1 Ld. *Raym.* 182.) still that case differs widely from the present. There the agreement was by parol for the purchase of a standing crop of mowing grass, then growing, for 20 guineas; neither earnest was paid, nor was possession given to the vendee, and before any of the grass was cut, the vendor told the vendee, he should not have it. Lord *Ellenborough* and the court, considered the agreement to be a contract, or sale of an interest in, or, at least, an interest concerning lands. The

difference between the cases is manifest; in the present case, the agreement so far as relates to compensation for the labour in making the improvements, does not affect any interest in the land, or concerning it. The case of *Waddington* v. *Bristow* also relied on by the defendant, is still less applicable to the present case. That case turned on the exposition of the stamp act, on an agreement for the sale of hops; the effect of the statute of frauds is not mentioned in the case. I conclude, therefore, this branch of the case, by saying, that the statute of frauds does not touch this agreement.

Next, is the promise a *nudum pactum*, for the want of a consideration? It undoubtedly is so, unless there existed such an equitable or moral duty on the part of the defendant, to pay for the improvements made by the plaintiff, as will uphold the promise; for it is past and executed. There is no evidence to show that it was executed, either at the express or implied request of the defendant. (1 *Fonbl.* 336. and the cases there cited.) A consideration is where there is a benefit to the party promising, or a loss to the person to whom the promise is made. The present case is without either of those ingredients, for it does not appear, nor is there the least reason to believe, that the plaintiff did a single act, or forbore to do any act, in consequence of the defendant's promise; he never admitted that the defendant had any right to the land, but withstood his claim to the utmost. The defendant, then, received no benefit from the promise, and the plaintiff did nothing in consequence of it. As it stands in the case, there was no mutuality; the defendant was to pay the plaintiff for his improvements, but the plaintiff was to be at liberty to controvert his title, and to put him to the charge of evincing it in a court of justice. Will the moral obligation assist the plaintiff's case? There may be cases in which the law will not afford a remedy, when a promise intervening will give a right of action; I shall not undertake to discri-

minate between such as do, and such as do not, afford a sufficient consideration, because, in the present case, I do not think there existed the least moral obligation on the defendant, to pay for the improvements made by the plaintiff. The plaintiff knowingly entered on land not his own, without any authority from the owner, and without the semblance of right. The improvements made by him were at his peril; to consider these services meritorious would be to encourage depredations on private property. I am therefore of opinion that the motion to set aside the nonsuit ought to be denied.

Judgment of nonsuit.