Overton, J.
 

 delivered the following opinion of the Court. This is an action-on.the case brought by the appellant, and the questions made go to question his right to a recovery. The Court will examine this subject in the order observed by the defendant’s counsel,
 

 1. On the principles of the common law ;
 

 2. On the principles governing a court of equity ;
 

 3. "With a view to the principles contained in our statutes.
 

 If a recovery can be had according to the principles of the common law, it must be for work and labor done on the land by agreement of the person
 
 *227
 
 to be charged, or, in other words, at his request; and this seems conformable to the opinion of the Court in 5 John. 272. If the law were otherwise the idea of property in lands would be almost annihilated. If owners could not have the exclusive use and control of real estate, it would.be in the power of others, by taking possession without permission and making large improvements, to acquire a property in the soil. It would be manifestly repugnant to the first principle of property, of society, and of free government, that any person should pay for work and labor done without his consent.
 

 The idea of property, so dear to freemen, would at once be lost if it can be controlled by others without the owner’s approbation. Therefore, at common law, a person who cleared or improved another’s land without his consent or request, was not only entitled to no compensation, but was liable to an action of trespass. Nor is it believed, on the second ground of inquiry, that a court of equity would directly sustain an action for the value of improvements. They have, and uniformly would afford relief under particular circumstances, for the value of improvements, to the tenant in possession, as against the rightful owner claiming that possession. These circumstances occur when an individual takes possession of land under a title, believing the land to be his own, and under that belief makes improvements. A person having the better title sues for the possession and recovers. Here equity would interpose in favor of the possessor innocently making those improvements by enjoining the claimant from taking possession until, by the rents and profits the improver could compensate himself for his labor; or by putting it in the power of the person recovering to take possession by paying the tenant the value of the improvements after deducting for use and occupation. Equitable principles .have usually been applied in behalf of the possessor, against the person seeking the possession by suit. If the possessor resigns the possession without claiming compensation, the law would presume that he either had been satisfied by the reception of the rents and profits, or that, knowing of the better claim, he did not design to claim any. This seems to be the course of reasoning to be collected from equitable precedents ; but it is not the intention of the Court to give any conclusive opinion on this ground, as it is not necessary. One point seems to be well settled in equity, that the improver cannot claim any compensation after he has notice that the holder of a better title means to claim the land. These principles are recognized in Kaims’s Prin. Eq. part 1, § 2 ; Hardin, 579 ; and have reference to a clear and uniform principle in equity, that he who asks equitable relief must show that he has acted conscientiously and equitably himself, before he can obtain it. Now, after clear and express notice that another holding a better title means to assert his right, the possessor cannot, in equity, say that the improvements were not made at his own risk. Thus much seemed to us proper to state
 
 *228
 
 respecting the general course of reasoning in equity, in order to clear the way for a more perfect view of the subject under the statutes of 1796, ch. 43, and 1805, ch. 42. Hay. Eev. 247-372.
 

 As the case before the Court is a suit at law, and not in equity, it remains to be considered how far these statutes are coincident with common law principles. The first Act is in these words : “ That if any grantee or person claiming by deed of conveyance, founded on a grant, hath, by virtue thereof, obtained peaceable possession of any tract of land, and shall, at any time thereafter, be dispossessed by due course of law, or otherwise put out of possession, without his, her or their consent, first had and obtained, that then, in that case, the person so dispossessed shall be entitled to recover at common law from the person to whose use the dispossession-was so made the value of the improvements which he, she or they have made on the said land.” The second Act, being in
 
 pari materia,
 
 must be taken in connection with the first. It re-enacts the provisions contained in the first, and introduces two new ideas : First, that a person claiming under a lawful entry shall be entitled to compensation for improvements. Secondly, that the value of the improvements shall be a lien on the land improved. In the interpretation of these Acts, it is insisted on the part of the plaintiff that he is entitled to compensation for all .improvements made previous to the time of eviction. In a waste and woodland country, as this is, the Legislature must have designed to favor those who had opened land, and had contributed to clear the country of the incumbrances of forest timber. To give the Acts a restrictive interpretation would discourage agriculture and the improvement of the country, — two objects which the Legislature evidently had in view.
 

 This interpretation involves fundamental principles of the highest concern to society in a free country. At this day it would be time misspent to descant at length on the principles of the Constitution and government under which we live. Let it suffice to observe that they secure to the honest and industrious the exclusive enjoyment of the fruits of that honesty and industry, and, in other words, the undisturbed use of their property. No man can be deprived of it but by his own consent, unless for public use, and not then without just compensation. These principles being inseparably interwoven in the frame and texture of our Constitution, cannot be
 
 destroyed
 
 by a legislative act. In deference to the legislative authority, however, we never presume they designed to violate the Constitution or the sacred rights of freemen. Any interpretation having this effect cannot be admitted. The Acts under consideration must be so interpreted as to steer clear of a violation of these constitutional principles. Where an act can have effect without obtruding on first principles, it is fair to give it that interpretation, because the Legislature are never presumed to violate these principles where a meaning can be fixed to their expressions which would
 
 *229
 
 avoid such a conflict. To give the Acts the large and literal interpretation contended for by the plaintiff’s counsel would unavoidably conflict with the fundamental principles adverted to. Thus, A is living on a tract of land, for which he has a grant; B makes an entry and obtains a grant, having a knowledge of A’s grant; he then, without the permission of A, settles on it, with a large number of slaves, and before A can evict him by a due course of law he makes extensive clearings, builds houses, and plants orchards. Agreeably to the literal interpretation of the Act, he is entitled to the value of these improvements; and not only so, but such value is a lien upon the land, let it go into whose hands it may. A suit is brought for these improvements against A, and a judgment recovered for as much or more than the whole land is worth. B takes out execution; the land is sold; most probably he becomes the purchaser. Though it is admitted that the Legislature was not competent to the power of passing an act directing that A’s land should be vested in B, yet the construction contended for enables B to do the same thing indirectly. Hence it results that these Acts must be so interpreted that they may stand with the principles of the Constitution. It seems to the Court that, consistently with these principles, the remedial part of the Act cannot be extended any further than the ground on which courts of equity have previous to this acted. The general principles laid down in the Acts were perfectly coincident, we believe, with the grounds of relief heretofore established by those courts. It is true the limitations or modifications of those principles which are recognized in equity make no part of the Act; they were too numerous to be delineated, or capable of definition if seen. Ve believe neither was the case in the nature of things; nor has it been usual, when legislating on general principles, to specify exceptions or modifications of those principles. Such things, from the nature of legislation, which is conversant in generals and not particulars, are peculiarly the subject of judicial interpretation.
 

 Before the passage of these Acts, any remedy which might have existed to recover the value of improvements was in a court of equity, and not at-law. The acts are so far alterative that they afford a remedy at law where equity formerly afforded relief; but it cannot at present be seen that a rational construction of those Acts will enable us to go any further. At the same time it seems proper to remark that, as the Act has made a legal subject of complaint out of an equitable one, it necessarily affords to the owner of the better title a legal defence on all the grounds on which he could have defended himself or opposed the claim of the improver in a court of equity.
 

 Applying these principles to the case before the Court, had the plaintiff any claim for improvements made previous to the defendant’s entry ? The Court are of opinion that he had not, because he had neither an entry, grant, nor deed, which the Acts require. Besides, it must be admitted that
 
 *230
 
 the Legislature of this State had not a full and absolute right, agreeably to the cession and other acts on that subject, to legislate respecting the disposition of the vacant soil. It was communicated to them only
 
 sub modo,
 
 as to make good the claims or warrants originating under the laws of North Carolina. Before these claims were satisfied, it would seem highly probable that they had no power to obstruct the perfecting of these claims by permission to improve, and requiring that the improvements should be paid for. It is considered on all hands that the plaintiff could not acquire a better claim to the land than the defendant’s ancestor by occupancy; so that his claim is merely that of a younger entry and grant, opposed to those of an older date. It is next to be ascertained whether the plaintiff could recover for improvements subsequent to the date of Shipp’s entry. As he cannot derive any claim to compensation under the occupant law, in this case, the subject must be named independently of it. Agreeably to the two Acts referred to, he could not claim compensation in any event until he had an entry, which was not until the 23d day of March, 1809. Could he claim compensation from that time ? The record does not state when the writ of ejectment was executed; it is said to have been issued in October, 1808. By a recurrence to the Act respecting
 
 the time of the
 
 commencement of the fall term of the District Court of Mero, it appears to have been on the second Monday of November. Hence, it would seem by legal presumption that the ejectment must have been executed previous to the commencement of that term, as it was then returnable. So that it appears the plaintiff had no express notice previous to the time of making his entry. Knowing that he had no right to claim by occupancy, and that the defendant’s ancestor had a grant for the land, founded on an older-entry, he ought to have stopped his hands as to making improvements. In progressing, he acted at his own risk, and therefore ought not to recover.
 

 The provisions of these Acts seem to be bottomed on the equitable principle, that a person improving land, believing it to be his own, ought to be compensated by him who obtains the use of such improvements; but the general principles of equity debar such improver from obtaining compensation if he knows another has a better claim. It is not now necessary for the Court to decide how this notice shall be afforded. It is sufficient for the Court to say that notice by the service of an ejectment is sufficient, without doing anything further. That notice was given in this case. If the Acts designed that improvers should be compensated for all improvements previous to notice being expressly given by the person having the better title, it would invert a presumption of law, founded in reason and the nature of property, to wit: that the state in which it is found conforms to the will of the owner. When land is permitted to remain uncleared, it is presumed
 
 to be the
 
 owner’s desire
 
 that it
 
 should be so. Now, if the acts enforce compensation in all cases, as where improvers clearly
 
 *231
 
 know of a better right, until notice of dissent is given it must be founded in the presumption that individuals owning uncleared lands are desirous to have them cleared at their own expense, and that the clearing will be at the place and in the manner that will meet with their approbation. Whether such presumption naturally arises from the generally unimproved state of lands here, it is not necessary to determine. This much may be predicated with safety, that such a legal presumption would go great lengths in overthrowing the essential rights of ownership. These observations are applicable only to cases where the improver must unavoidably know he cannot sustain a claim. If the owner stand by and see improvements made, it would be another consideration. In perplexed and doubtful cases, improvers having titles might well suppose their claims were good, until it should be otherwise determined by competent authority. In some of those cases, equity and these Acts would perhaps afford relief for lasting and valuable improvements up to the time of the judgment of the Court. On this legal presumption and its consequences, the Court, however, think it unnecessary to give any decided opinion. The judgment of the Circuit Court must be affirmed.
 

 Note. — See the note to the case of Bristoe
 
 v.
 
 Evans, 2 Tenn. 841, where the unsatisfactory character of the decisions on these laws is noted, and the result shown to be this, that the acts in question only changed the forum of relief, without altering its extent. The Court determined, in McKinly
 
 v.
 
 Holliday, 10 Y. 479, after reviewing the previous cases, that the defendant in ejectment could, under these acts, recover compensation for such improvements as bettered the estate, to the extent of the rents’and profits chargeable to him, but no more. In Jones
 
 v.
 
 Perry, 10 Y. 59, the decision was, that, in equity, parties in possession under a void deed, but believing they had title, would be allowed for valuable and permanent improvements, not exceeding the rents and profits for which they were chargeable. — Ed.