Pee Curiam*
 

 Thomas H. Perkins, Daniel Perkins, William Perkins, and Nicholas Perkins, the elder, on the 6th of July, 1796, purchased of Joshua Hadley 640 acres of *'land. Hadley executed a writing under seal, stating that he had received $220 in part payment of said 640 acres of land, describing them, and binding himself to make 'title on payment of the residue of the purchase money. That residue was afterwards paid. Before 1804, the purchasers divided the lands they had purchased from divers persons. One half of this 640 was allotted to the said Nicholas Perkins, the elder, and the other half thereof to Daniel Perkins. Nicholas Perkins, the elder, died. By his will, half of this tract allotted to him was in a division assigned to his son Constant, and the other half to his son Nicholas. Nicholas, the son, sold his
 
 *387
 
 part to John P. Perkins, provided the amount should not exceed 220 acres, which sale was evidenced by a writing under seal. John P. Perkins paid a full and valuable consideration, and took possession of the part allotted to Nicholas, made valuable improvements thereon worth $500, and resided thereon until he died, in November, 1807, intestate, leaving the said Eliza his widow, and the other complainant, his son. Hadley had a good title to part of said 640 acres, that is to say, to 49 acres, part of the section allotted to Nicholas, the son, which 49 acres includes the
 
 improvements;
 
 also he had title to the part allotted to Daniel Perkins. The residue of the 640 acres was covered by an elder grant, which Hadley knew not of when he sold as aforesaid. Hadley failing to convey the said 640 acres, the said Thomas H. Perkins, Daniel Perkins, and William Perkins sued him on said writing, and in January, 1811, recovered $4,883 and costs, the value without improvements. Hadley thereupon brought an ejectment to recover the possession of the said 49 acres of land; and the complainants brought this bill claiming the said 49 acres of land, and praying that Hadley may be compelled to convey them, and that the said Thomas H. Perkins, Daniel Perkins, and William Perkins may be enjoined as to such part of their said * judgment as is for the said 49 acres. Constant Perkins, son of Nicholas, the elder, sold his part which came to him on the death of his father, being 206 acres, to H. Cook.
 

 Upon this statement the question is, can the plaintiff retain the 49 acres of land, allowing for the price assessed in the verdict, and, after deducting that from the judgment, have the residue of her proportion of the judgment for the lands interfered with and taken by elder and better claims ?
 

 It is to be recollected, that so far as this bill seeks to retain the 49 acres, it is a bill for specific performance.
 
 That
 
 is in the discretion of the court, and ought not to be decreed where it is unreasonable, or hard, or unjust to decree it, as prayed for. Where lands are sold to several persons and one bond for title be given to all, it would be unreasonable and injurious to the obligor to permit the obligees, by agreement amongst themselves, to take
 
 part
 
 of the lands for which the obligor could make title, leaving other parts for the obligor. The valuable parts would be selected and the residue be rendered thereby unsalable. It would consist of unequal and unconnected parts, of no use or value to any one but the owner of
 
 *388
 
 the selected parts. This is a situation into which, at the formation of the contract, it was not contemplated to place the vendor, and one which, if he had been asked about, he would most probably not have consented to. If, then, any one or two of the obligees will insist “to have part of the land to which the obligor can make title, it must be upon condition that he or they will not pick out the choice spots, leaving the mean ones for the vendor. They must take the whole, and deduct from the judgment as is correspondent to the assessed value of the land, leaving the residue of the judgment above such deductions to be paid by the defendant at law to the other plaintiffs at law. Otherwise the plaintiff in equity must renounce every part of the land, and take * their proportion of the damages recovered. In the present instance, the plaintiff in equity cannot at her pleasure take part of the land such as suits her, and for such parts as do not suit her take damages. If she take damages, then she ought to be allowed for the permanent improvements made on the land. The rule is, that whoever takes possession under a contract which afterwards for any cause is rescinded or relinquished, shall be allowed for intermediate improvements made on the lands. They are made by the approbation and consent of the vendor. If instead of conveying the land agreeably to his contract, he so manages as not to comply with his contract to convey, whether willfully or involuntarily, he ought to make retribution, and become not richer at the expense of another by taking advantage of his own failures. Indeed he ought to do so upon another ground also. He ought not to receive the profits of another’s labor without just compensation, unless he can show that the labor was done without his consent and against his will. Cas. T. Talbot, 234; Hard. 579; 3 Call, 135; 1 Wash. 329; 5 Johns. 272. There is no difficulty as to the part or share of the judgment to be allotted to the complainant, for it is admitted that the plaintiffs at law, who are three out of four of the obligees, recovered for the whole land. Perhaps by our law, even as it now stands, there could not be a recovery for part. At the common law this would have been a joint bond, to be sued by the obligees jointly, by one action and not by several actions. Where that is the nature of the original contract, the death of one produces survivorship; and there is but one action allowed. Much less can the parties who are obligees, by an act of theirs, divide it into
 
 *389
 
 several actions. The law abhors multiplicity and splitting of actions. For this reason it is that you cannot assign a bill of exchange for part of the sum due by it. The defendant thereby might be subjected to 100 actions instead of one. So also in case of warranty, if it be * made by feoffment to A and B and they enfeoff different persons, the warranty is gone, for it cannot be used unless by different and several vouchers and actions instead of one; and the law will rather destroy it altogether, than allow
 
 that;
 
 so also of a partition of lands, when not pursuant to law the warranty is gone, for the same reason. The defendant must not be subject to more actions than by his own contract he was originally made liable. Carth. 166; Salk. 65. So also of a feoffment with warranty to two, and one enfeoffs a third, the warranty does not go to that third, for [if] it did, then he would vouch and the other feoffee also;' and so two vouchers and recoveries be substituted in place of one. • The original feoffee may still vouch, for as to him there is but one action still. Co. Litt. 385. Has our law operated any alteration in this particular, by abolishing joint tenancy? 1784, ch. 22, § 6 : “In all real and personal estates, held in joint tenancy, the part or share of any person dying, shall not,
 
 &c.,
 
 but shall descend or be vested in his executors, administrators, or assigns, respectively, of the tenant so dying, in the same manner as estates held by tenancy in common.” On the side of the obli-gors, by 1789, ch. 57, § 5, on the death of a joint obligor, the joint debtor’s contract survives against the heirs, executors, or administrators of the deceased obligor. The law of joint tenancy in personals remains unaltered after the death of one, except in the point mentioned in the act, which as between the obligees regards the right of property ; but the
 
 remedy
 
 is not altered so as to become two actions instead of one. The remedy is still single, but with the addition of another plaintiff. If the survivors sue without the executors of the deceased, there, as the latter ought to be parties in order to secure the share of the judgment which by the law of 1784 they are entitled to, the others ought to be stopped by plea in abatement from proceeding in the action brought by them alone. How else can the executors ever get * their share, under the act of 1784? The judgment, when collected, is to be paid to the plaintiffs, and they are not so. The action, by whomsoever brought, is for all the damages, and cannot
 
 *390
 
 be for less unless by consent. For it is a claim for a breach of an entire contract, in which a part performance is no plea, nor can damages be claimed for a non-performance in part. It is not only so by law, but in this instance it is admitted that damages have been assessed for all the interest.
 

 In putting a construction on the act of 1784,'the court will not overturn a rule so carefully fostered by the law as this for the prevention of multiplied
 
 actions;
 
 but will, pursuing the spirit of the common law, adopt that of two constructions which will leave the rule unimpaired. All must be joined in the action, and if some will not agree to prosecute the suit, such must be summoned and severed, and the others permitted to proceed alone.
 

 Therefore decree that the plaintiff shall be entitled to the one fourth part of the damages recovered by the plaintiffs at law, the defendant at law first allowing to her the value of the permanent improvements made upon the land, by the obligees, or any of them, or those claiming under them, to be ascertained by the report of the master. Let a reference be made to him for that purpose, and his report be made to the next term. An allowance to be made for the rents in the mean time, that is to say, a reasonable allowance for the use and occupation of the lands in the mean time, by the obligees or any persons holding under them. The costs to abide the final hearing of the cause, and further directions to be then given.
 

 See, as to
 
 specific performance, Hall
 
 v.
 
 Ross,
 
 3 Hay. 200, and note
 
 sub fin.
 
 As to
 
 improvements, Humphreys
 
 v.
 
 Holtsinger,
 
 3 Sneed, 228;
 
 Alston
 
 v.
 
 Boyd,
 
 6 Hum. 504;
 
 Herring
 
 v.
 
 Pollard,
 
 4 Hum. 362;
 
 Matthews
 
 v.
 
 Davis,
 
 6 Hum. 324;
 
 Rhea
 
 v.
 
 Allison,
 
 3 Head, 176;
 
 Bell
 
 v.
 
 Bowers,
 
 4 Cold. 311;
 
 Ridley
 
 v.
 
 McNairy,
 
 2 Hum. 174. As to
 
 splitting actions,
 
 and
 
 actions on joint contracts,
 
 King’s Digest, 211, 213
 
 et seq.;
 
 Code, 2789.