CHESHIRE, OCTOBER TERM, 1819.

### EBENEZER WITHINGTON *vs.* AMOS COREY.

Where judgment has been rendered for the demandant in a writ of entry, he is, in an action for mesne profits, entitled to recover something, if any profits have been received by the tenant within the last six years. But such judgment, when offered in evidence, proves only title in the plaintiff and occupation by the defendant since the date of the writ of entry ; so that a longer occupation and the actual profits received must be otherwise proved.
It is no bar to an action for mesne profits, that the tenant, in the trial of the writ of entry, was allowed for his improvements under the " betterment act."

THIS was an action of trespass for mesne profits.

It was tried here, May term, 1819, when the plaintiff gave in evidence copies of a judgment in a writ of entry for these

Withington
*vs.*
Corey.

premises, in favor of *Thomas Hancock* against the present defendant.

He then proved, that said *Thomas* was since deceased, and that his real estate had been divided among his heirs, of whom the plaintiff was one and had received these premises as a part of his share.

The only defence relied on was, that the defendant, when prosecuted in the writ of entry, was in possession of the premises under color of title ; and consequently had by agreement been allowed a certain sum for his improvements, to be paid in the same manner prescribed in our statute, when such facts are found by a jury.

A verdict was, therefore, returned for the plaintiff for a sum settled by the parties, subject to future consideration on the case thus made.

*J. C. Chamberlain*, counsel for the plaintiff.

*D. Heald*, for the defendant.

WOODBURY, J., *pro curia.*

There exist certain general principles, which govern this class of actions, and which consequently must govern the present case, unless its peculiar circumstances take it out of the operation of those principles.

Thus the verdict, in a writ of entry or of ejectment, for the demandant is conclusive evidence of a right to recover from the tenant such mesne profits as have been received from the same premises. Indeed, in ejectment judgment was formerly rendered for the mesne profits at the same time it was rendered for the premises themselves.(1)

(1) 3 Bl. Com. 205.

It can hardly be deemed an exception to the above general principle, that the recovery in trespass is limited to the profits received since the entry alleged in the action for the land, and also to those received within six years prior to the date of the writ of trespass. *Burr.* 665.—7 *D. & E.* 112. *Bull. N. P.* 88.—4 *East* 585.—2 *John.* 370.—3 *John.* 481. —11 *John.* 405.—13 *John.* 448.—1 *Chitt. Pl.* 188.

And that the former judgment may itself be evidence of occupation by the tenant, only between the time of its rendition and the date of the writ on which it is founded.(2)

(2) 14 Mass. Rep. 242.

These are limitations or qualifications to the general principle ; and we have been unable to find any exceptions to it, or any circumstances to take the present case out of their operation, unless the allowance made to the tenant for his improvements amounts to a release of the mesne profits by the demandant, or is in equity a set-off and adjustment of them.

The case of *Jones vs. Carter*,(1) holds, under a statute somewhat similar, that such allowance is a bar to any recovery for mesne profits. (1) 12 Mass. Rep. 314.

But we entertain a different opinion as to the operation of this allowance under our statute ; and our opinion is partly founded on the different provisions in the two statutes, and partly on the inconclusive reasons offered in favor of their construction.

The statute of this state enacts, that, in actions for the recovery of real estate, if the tenant " holds by virtue of a sup-" posed legal title under a *bona fide* purchaser, and which " [land] the occupant or person, under whom he claims, has " been in the actual peaceable possession or improvement of " for more than six years before the commencement of the " action, the jury which tried said action, if they find a ver-" dict for the plaintiff, shall also inquire, and by the verdict " ascertain the increased value of the premises by virtue of " the buildings and improvements made by such person or " persons, or those under whom he or they claim ; and no " writ of possession is to issue till said sum is paid."(2) (2) 1 N. H. Laws 180.

It will be perceived, that the jury do not here, as in Massachusetts, assess the value of the land while unimproved ; and that the demandant cannot here as there compel the tenant to purchase the land at that value. Those provisions seem to be there considered as a release, by statute or by agreement, of the action of trespass.

But the mere compulsory provision in our act, that the demandant shall pay the value of the improvements before he can have possession, seems to countenance neither the idea of a release of the action of trespass, nor a set-off in any way against the mesne profits.

Withington
*vs.*
Corey.

As there is nothing then in the express language of the statute to bar this action, it remains to inquire, if there be any thing in the spirit or nature of its provisions to bar it. Had the legislature intended to bar this action, it would have been natural and easy to have said so in express terms, or at least to have said, that the jury should deduct the mesne profits from whatever was the increased value by means of buildings and improvements. But the theory of this statute did not require such a provision; and in practice it would sometimes be highly unjust if not impracticable. It was as well known, before as since the statute, that whoever owns any species of property is entitled to its natural increase and profits.(1)

(1) 2 Gall. 143, Soc. for Prop. Gospel vs. Wheeler.—5 John. 277, Trean vs. Hardenburgh.

And we do not believe, that the legislature ever contemplated the least violation of this principle, in the statute under consideration. But it was equally well known, that, through accident or misapprehension, a person, not the owner of property, might give to it artificial increase, profits, or value; and in countries newly cultivated the titles of real estate are so often doubtful, that strangers might purchase of an apparent owner, and proceed to make fences, buildings and other artificial improvements, without any imputation of negligence or dishonesty. As these improvements, being annexed to the freehold, would pass to the actual owner of the land, there seemed to be a propriety in making him pay their value. The justice of this provision is more striking when we reflect, that it is confined to cases, where a " supposed legal title" exists in the tenant, and where the actual owner has for " six years" laid by and not disturbed the tenant in making these improvements.*

Such is the theory of the statute; and it is in strict analogy to the doctrine in trespass and trover for personal property; where the value of the property at the time of the conversion, and not any incidental and increased value since, is the guide as to what is to be recovered. *Burr.* 1010.—1 *Str.* 406.—8 *D. & E.* 162.—2 *John.* 39.—14 *John.* 131, 273.— 3 *John. Ca.* 17.—3 *Mass. Rep.* 390.

---

* 1 Greenleaf Rep. 92, Brackett vs. Norcross.

But the natural increase or profits of the property after its conversion, is also to be recovered.(1) And in a like manner the owner of land, who has been disseized, is entitled to recover not only the land itself, but the natural increase and profits from it after the disseisin.

The theory of the statute, then, requires the actual owner to pay the tenant for the expensive fixtures and permanent improvements made on the land ; but so far from requiring him to give up also the natural annual profits received from the land, it contains no intimation of that kind, and if it did, would be unsupported by any analogies, and would carry on its face gross injustice. If the actual owner pay the tenant for all his expenditures ; for the permanent ones by money, and for the current and ordinary ones in cultivation, by a portion of the crops raised, the tenant has no cause of complaint, if obliged to account for the residue of the crops in an action for mesne profits.

To pay the tenant thus much imposes no peculiar hardship on the owner and fulfils every rational claim on the part of the tenant ; to pay him more would deprive the owner of the natural profits accruing from his property, and confer them on one who is admitted to be a wrong doer, and who has no right to them, either moral or equitable.

That the tenant may thus suffer, or the views of the legislature be thus thwarted, as is supposed in *Jones vs. Carter*, appears to us altogether impracticable. Because the tenant in this way obtains the full value of all his permanent improvements, whether small or great; and at an estimation, too, which the practice under this statute evinces to be abundantly high. He also obtains all his ordinary expenses of cultivation, by paying only the mesne profits, the net income, or, in other words, the fair rent of the land. Hence, whether his profits were small or his improvements large, or *vice versa*, he is not prejudiced ; and to suppose, that the legislature meant to bestow still higher privileges upon him, is to impute to them views, not warranted by the language or spirit of the statute, and not in themselves either just or reputable.

Withington
*vs.*
Corey.

(1) 1 N. H. Rep. Peirce et al. vs. Rowe ; and Chauncey et al. vs. Yeaton.

Withington
*vs.*
Corey.

(1) Justin. In.
b. 2, t. 1, s. 35.

The civil law in similar cases made no allowance for improvements, and permitted no recovery of mesne profits.(1) This in some instances might be equitable. But where the improvements were small and the mesne profits great, or *vice versa*, they would prove a disproportionate set-off to each other ; and our statute is much more equitable, which requires the improvements, whatever their amount, to be paid for on the one hand ; and leaves the mesne profits, whatever their amount, to be paid for on the other hand.

The law of Massachusetts, as construed in *Jones vs. Carter*, is not so equitable as the civil law ; for it subjects the actual owner of the land both to pay for the improvements, and to lose all the mesne profits. Moreover, it would be impossible for a jury, in estimating the value of the improvements, to always effect justice by deducting from their estimate the mesne profits ; because the permanent improvements may not have exceeded ten dollars in value, and the mesne natural income or profits of the land may have amounted to ten hundred dollars.

The danger, also, to which the tenant is exposed in losing the consideration he may have paid to his grantor for the land is altogether imaginary, if he is secured as he ought to be by proper covenants ; and if, by gross neglect, he is not so secured, that circumstance should have no bearing on the point now in discussion.

*Judgment on the verdict.*