I. M. JAYNES & SON, Plaintiff in Error, v. FIVE POINTS LUM-
BER CO., Defendant in Error.

Western Section. January 10, 1930.

Petition for Certiorari denied by Supreme Court, May 24, 1930.

C. E. Pigford, W. H. Moore and H. C. Murchison, of Jackson, for plaintiff in error.

Pearson & Hewgley, of Jackson, for defendant in error.

SENTER, J. The parties will be referred to as in the court below, Five Points Lumber Company, plaintiff, and I. M. Jaynes & Son, defendant.

This is an action on an account for lumber alleged to have been sold and delivered by plaintiff to defendant for the sum of $37.50. The suit originated in a Justice of the Peace court, resulting in a judgment in favor of plaintiff for the sum of $37.50 and costs. From this judgment defendant appealed to the Circuit Court of Madison county, and was heard before the Circuit Judge without the intervention of a jury, resulting in a judgment in favor of plaintiff and against the defendant, I. M. Jaynes, for the sum of $37.50. A motion for a new trial was duly made by the defendant, which motion was overruled and disallowed, and from the action of the court in overruling and disallowing the motion for a new trial and rendering judgment against the defendant, the defendant excepted, and prayed and was granted an appeal in the nature of a writ of error to this court. The appeal has been duly perfected and errors assigned.

There are ten assignments of error, but the only real question presented by these several assignments goes to the action of the court in rendering a judgment against the defendant, where the lum-

ber was bought by the owner of the building and charged by the plaintiff to the owner; it being contended that under the evidence there was no contractual relation existing between the plaintiff and the defendant and no privity.

It appears that B. C. Hughes, whom we will refer to as the owner, had contracted with I. M. Jaynes to build a house for him in the City of Jackson, Jaynes to furnish all material used in the building. Mr. Parrish was the architect. The specifications called for some hardwood flooring for certain rooms, and also for "edge grain pine flooring" for other rooms. It appears that Mr. Jaynes, as the contractor, purchased the materials from the City Lumber Company. The pine flooring sent to the job did not meet the specifications as being edge grain pine flooring. Mr. Hughes, did not want the inferior flooring used, and he had observed a pine flooring in a cafe in Jackson that appeared to him as being the flooring that he desired. He communicated this fact to Mr. Parrish, the architect. It does not definitely appear just who ordered this particular lot of flooring from the Five Points Lumber Company, but it was delivered to the building and was received by a Mr. Cantrell, a carpenter working on the job, employed by the contractor, and was used in the building. The lumber was charged by the Five Points Lumber Company to B. C. Hughes, because it was used in the Hughes building, but when it was ascertained that Jaynes, the contractor, was to furnish all the materials under his contract with Hughes, the plaintiff demanded payment of Jaynes, and upon his refusal to pay the bill, the suit resulted.

We think it clear from the evidence that Jaynes, under his contract, was to furnish all the materials. The particular flooring delivered by plaintiff to the building was used by the workmen, and went into the house. Cantrell accepted this flooring. It appears that Jaynes paid for all other materials used in the building, but refused to pay for this particular lot of flooring solely on the ground that he did not order the same, and did not contract with plaintiff to pay for the same. It appears that Jaynes had had some trouble with the Five Points Lumber Company on some other job, and did not wish to buy any of the material from the Five Points Lumber Company. However, it appears that the lumber which he did have delivered for this particular floor, did not come up to specifications, and the owner, through his architect, found that the flooring to meet the specifications could be had at the Five Points Lumber Company. Jaynes knew that this lumber was used in the building, and also knew that it was his duty under the contract to furnish the flooring of the quality to meet the specifications. In paying the bills for all other lumber which he purchased for this building, he did not pay for the amount of lumber that was sent to the building, and which was rejected as not coming up to specifications. It certainly could not have made any difference to Jaynes that this particular lumber

was sold by the Five Points Lumber Company, since no question is made as to the price.

The suit being for a sum under $50 and commenced before a Justice of the Peace, under section 5936, Shannon's Code, it is tried upon principles of equity. The section of the code referred to reads as follows:

"Any Justice of the Peace, and any court of this State, before whom any case may be pending, by appeal or otherwise, where the subject-matter does not exceed fifty dollars, shall hear and determine such cause upon principles of equity, and render such judgment or decree as the merits of the case may require, and in the same manner as courts of chancery."

Certain authorities are cited and relied upon by appellant to support the contention that even though the case is tried according to the principles of equity, that there must be privity, and that a seller cannot impose himself upon a purchaser and then hold the purchaser liable by delivering materials to the defendant which the defendant did not order and did not contract to receive. (Townsend v. Heirs, 3 Tenn., 293; Boston Ice Co. v. Potter, 123 Mass., 28; 25 Am. R., 9; Murphy v. Renkert, 59 Tenn., 400, 35 Cyc., 59; Winchester v. Howard, 97 Mass., 303.)

The cases cited and relied upon by appellant are controlled by the facts of the respective cases, and are readily distinguishable from the instant case.

In this case it appears without dispute that Hughes, the owner, paid to Jaynes, the contractor, for all the materials used by Jaynes in the building, including this particular lot of flooring, and it also appears that Jaynes used this flooring in the building. He certainly got the benefit of it and did not have to pay to the other lumber company for this amount of flooring. The fact that plaintiff erroneously charged the lumber originally to Hughes would not alter the situation with reference to Jaynes' liability under his contract to pay for all lumber used in the building, unless this particular lumber was charged at a higher price than Jaynes could have purchased the lumber to meet the specifications elsewhere. Hughes had seen this particular quality of lumber on another floor, the cafe, and communicated the fact to the architect. We think it also immaterial just who ordered this lumber, since the workman employed by Jaynes received it and it was used by Jaynes on this job. It would therefore be inequitable for Jaynes to have gotten this lumber and used it and received pay for it from Hughes, and then to escape liability. Although the case was tried in a court of law under the section of the code referred to it was triable on principles of equity, and we think that in equity Jaynes is liable.

We find no error in the judgment of the court and it is accordingly affirmed. Judgment will be rendered here for the amount of the

judgment below, with interest thereon and the cost of the suit, including the cost of this appeal, in favor of plaintiff and against the defendant, I. M. Jaynes, and surety on the appeal bond, L. D. Moore, and for which execution may issue.

Heiskell and Owen, JJ., concur.