## KENT *v.* RAND, *Adm'r.*

The promise of a married woman, made when the common-law disability of coverture existed, does not furnish a consideration upon which her promise to pay the same debt, made after the disability is removed, can be sustained.

ASSUMPSIT, for money had and received by the defendant's intestate, Mary Snow, to the plaintiff's use. Facts found by a referee. In the summer of 1855 Mary Snow, being then a married woman, borrowed from the plaintiff $275 for the use of her husband in his own business. At that time she had title by deed from her father of his homestead in Rochester, of which her father held a life lease from her. Her husband died in 1858, her father in 1859, and her mother in 1860. The referee also found facts which, it was claimed, showed promises by Mary Snow to pay the debt, made on several occasions between 1855 and the time of her death in 1883, while she was sole and the owner of property in her own right, the latest of which was within six years before her death.

*Worcester & Gafney,* for the plaintiff.

*T. J. Smith* and *J. G. Hall,* for the defendant.

SMITH, J. When the defendant's intestate borrowed the sum of $275 of the plaintiff in 1855, she was a married woman. The

money was borrowed for the use of her husband in his business, and there is no evidence that it was otherwise used or applied. She had, at the time of the loan, title by deed to her father's homestead in Rochester, subject to her lease to him for the term of his life. It does not appear that she held this property to her sole and separate use, or that the promise made by her to the plaintiff was in respect to her separate property. Her common-law disability, therefore, rendered her contract void. *Bailey* v. *Pearson,* 29 N. H. 77; *Ames* v. *Foster,* 42 N. H. 381; *Shannon* v. *Canney,* 44 N. 592; *Hammond* v. *Corbett,* 51 N. H. 311; *Batchelder* v. *Sargent,* 47 N. H. 262; *Muzzey* v. *Reardon,* 57 N. H. 378; *Read* v. *Hall,* 57 N. H. 482; *Messer* v. *Smyth,* 58 N. H. 298; *Penacook Savings Bank* v. *Sanborn,* 60 N. H. 558. The question then is, whether assumpsit can be maintained upon her promise to pay the debt made after the death of her husband; or, in other words, whether a moral obligation to pay money or perform a duty is a good consideration for a promise to pay, or to do the duty.

In a note to *Wennall* v. *Adney,* 3 Bos. & Pull. 249, is a review of many of the English cases, the result being summed up as follows: "An express promise, therefore, as it should seem, can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision." The doctrine of this note is approved in *Smith* v. *Ware,* 13 Johns. 257, *Mills* v. *Wyman,* 3 Pick. 207, *Goodright* v. *Straphan,* Cowp. 201, *Littlefield* v. *Shee,* 2 B. & Ad. 811, *Meyer* v. *Haworth,* 8 A. & E. 467, *Eastwood* v. *Kenyon,* 11 A. & E. 438, *Jennings* v. *Brown,* 9 M. & W. 501, and in 1 Pars. Cont. 432–436.

In *Loyd* v. *Lee,* 1 Stra. 94 (decided in 1718), the facts were these: A married woman gave a promissory note as a feme sole, and after her husband's death, in consideration of forbearance, promised to pay it. In an action against her it was insisted that though being under coverture at the time of giving the note, it was voidable for that reason; yet by her subsequent promise, when she was of ability to make a promise, she had made herself liable, and the forbearance was a new consideration. "But the C. J. held the contrary, and that the note was not barely voidable, but absolutely void: and forbearance, where originally there is no cause of action, is no consideration to raise an assumpsit. But he said it might be otherwise where the contract was but voidable. And so the plaintiff was called."

*Lee* v. *Muggeridge,* 5 Taunt. 36 (decided in 1813), a similar case, was decided the other way. The facts were as follows: A married woman, having an estate settled to her separate use, gave a bond for repayment by her executors of money advanced at her

request on security of the bond to her son-in-law. After her husband's decease she wrote a letter addressed to the plaintiff, stating " that it was not in her power to pay the bond off, her time here was short, and that it would be settled by her executors." The plaintiff brought assumpsit on this promise against her executors, and recovered a verdict. The defendants moved in arrest of judgment, on the ground that no sufficient consideration was shown for the promise. The verdict was sustained upon the ground that a moral obligation is a good cause for a promise to pay.

In *Littlefield* v. *Shee*, 2 B. & Ad. 811 (A. D. 1831), the facts were these: The plaintiff's testate in his lifetime supplied the defendant, a married woman whose husband was absent, with butcher's meat. After the death of her husband the defendant promised to pay when it should be in her power, and her ability to pay was proved at the trial. The plaintiff was nonsuited, and the nonsuit was sustained upon the ground that it appeared the goods were supplied to the wife whilst her husband was living, so that the price constituted a debt due from him. Lord *Tenterden*, C. J., in alluding to *Lee* v. *Muggeridge*, said, " The doctrine that a moral obligation is a sufficient consideration for a subsequent promise is one which should be received with some limitation."

In *Meyer* v. *Haworth*, 8 A. & E. 467 (A. D. 1838), the defendant pleaded coverture to a declaration in assumpsit for goods sold and delivered. The plaintiff replied, that the defendant was at the time of the contract separated from her husband, and living in open adultery; that the plaintiff did not know of the marriage or adultery; and that the defendant, after her husband's death and before action brought, in consideration of the premises, promised to pay. Upon demurrer, Lord *Denman*, C. J., said the subsequent promise was " not sufficient. The debt was never owing from her. If there was a moral obligation, that should have been shown." *Littledale*, J., said,—" If there was any moral obligation, it should have been stated. The replication does not support the declaration. The promise in the declaration was altogether void. This is not like the case of an infant whose promise is voidable only."

*Eastwood* v. *Kenyon*, 11 A. & E. 438 (A. D. 1840), decides that a pecuniary benefit voluntarily conferred by the plaintiff and accepted by the defendant is not such a consideration as will support an action of assumpsit on a subsequent express promise by the defendant to reimburse the plaintiff. Lord *Denman*, C. J., commenting on *Lee* v. *Muggeridge*, said the remark of Lord *Tenterden* in *Littlefield* v. *Shee*, " that the doctrine that a moral obligation is a sufficient consideration for a subsequent promise is one which should be received with some limitation," amounts to a dissent from the authority of that case.

*Cockshott* v. *Bennett*, 2 T. R. 763 (A. D. 1788), decides that a subsequent promise to pay a note void on the ground of fraud, is a promise without consideration which will not maintain an action;

and in *Jennings* v. *Brown*, 9 M. & W. 501, it was said,—"A mere moral consideration is nothing."

Attempts have been made to distinguish the case of *Lee* v. *Muggeridge* from *Loyd* v. *Lee* and subsequent cases; but the doctrine of the note in *Wennall* v. *Adney*, that a mere moral obligation is not sufficient to support an express promise, is generally recognized as correct. *Mills* v. *Wyman*, 3 Pick. 207; *Loomis* v. *Newhall*, 15 Pick. 159; *White* v. *Bluett*, 24 E. L. & E. 434; *Cook* v. *Bradley*, 7 Conn. 57; *Hawley* v. *Farrar*, 1 Vt. 420; *Ingraham* v. *Gilbert*, 20 Barb. 152; *Bates* v. *Watson*, 1 Sneed 376; *Parker* v. *Carter*, 4 Munf. 273; *M'Pherson* v. *Rees*, 2 Penr. & W. 521; *Frear* v. *Hardenbergh*, 5 Johns. 272; *Society* v. *Wheeler*, 2 Gall. 143; Broom Leg. Max. 746; 1 Pars. Cont. 432 *n. (t)*, 435; Langdell, Sum. Law of Cont., ss. 71–79.

In cases of bankruptcy and the statute of limitations the law only suspends the remedy. It does not extinguish the debt. *Bank* v. *Wood*, 59 N. H. 407; *Badger* v. *Gilmore*, 33 N. H. 361; *Wiggin* v. *Hodgdon*, 63 N. H. 39. The contracts of infants are voidable, and may be ratified by an express promise after age. In this respect they are distinguished from the contracts of married women, which, owing to the disability of coverture, are void at common law. Being void. no debt ever existed; and hence they furnish no consideration for a subsequent promise made during widowhood. *Watkins* v. *Halstead*, 2 Sandf. 311; *Waters* v. *Bean*, 15 Geo. 358; 1 Pars. Cont. 435. This doctrine has received assent in this state. *French* v. *Benton*, 44 N. H. 28, 31.

It has been assumed in this discussion that the defendant's testate promised to pay the debt within six years of her death. Whether the evidence was sufficient to warrant such a finding is a question we have no occasion to consider. The defendant is entitled to judgment on the report.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.