GRAFTON.

---

WELLS & a. v. FOSTER, and ROUNSEVEL, *Adm'r.*

A married woman may bind herself by a note and mortgage of real estate, given to obtain money for her husband, with which to pay his debts.

WRIT OF ENTRY, on a mortgage executed by Charles Foster and his wife Louisa, March 29, 1883, to Herbert B. Moulton, to secure the payment of their note of that date for $800, payable to Moulton or order on demand with interest.  Facts found by the

court. After the note was overdue, it was endorsed, and the mortgage assigned by Moulton to the plaintiffs for value. Charles was defaulted; the administrator defends under the general issue, with a brief statement.

Louisa died pending the suit, leaving a will by which she gave to her husband one dollar, to her two sons one dollar each, and the residue of her estate to her daughter, Jessie M. Titus. From May 6, 1882, until her death she owned the farm in question in her own right. Charles carried it on, and managed it on his own account. In March, 1883, he was, and for several years had been, involved in debt and insolvent. Before March 29, Louisa agreed with Charles to mortgage her farm for money to pay his debts. He applied to Moulton for the money, stating that he and his wife wanted to borrow $800, and that she would mortgage the farm as security. Moulton told him that he would let his wife have that sum upon her note and mortgage of the farm. March 29, Louisa and Charles executed the note and mortgage, and delivered them to Moulton, who in the presence of Louisa handed the $800 to Charles. Moulton had no negotiation or talk with Louisa. He understood that Charles was her agent in the business. He was not informed, and did not know, for what purpose the money was wanted. He knew that Charles was financially irresponsible, and made the loan on the credit of Louisa and the security of the mortgage exclusively. With Louisa's knowledge and consent, Charles appropriated the $800 to the payment of his debts.

*H. M. Morse* and *W. S. Ladd*, for the plaintiffs.

*Aldrich & Remich* and *J. W. Remick*, for the defendants. The note and mortgage, so far as they concern the estate of Mrs. Foster, come squarely within the second proviso of *s.* 12, *c.* 183 of the Gen. Laws, viz.,—" No contract or conveyance by a married woman of property held by her in her own right, as surety or guarantor for her husband, nor any undertaking by her for him or in his behalf, shall be binding upon her."

Upon the facts found in the case, we submit,—(1) That as to the note and mortgage in question, Mrs. Foster stands in the relation of a surety or guarantor for her husband, within the meaning of the statute. (2) That the transaction was an undertaking by her for him and in his behalf, within the meaning of the statute. As to the first proposition, the rule is established, that whether a wife is principal or surety is not to be determined upon any formal consideration. The law has regard to the fact, the reality, the substance. *Bank* v. *Buzzell*, 60 N. H. 189. " Whether a contract executed by a married woman is one of suretyship or not will be determined by a consideration of whether it was made in her behalf and upon a consideration moving to her, or for the benefit of her separate estate. To the extent that the consideration

was received by her, or inured to her benefit or to the benefit of her estate, she will be held to have contracted as principal. To the extent that the consideration was received by her husband, or that it went to pay his debts or liability, for which neither she nor her property was bound, it will be held a contract of surety-ship." *Vogel* v. *Leichner*, 102 Ind. 55; *Orr* v. *White*, 106 Ind. 341; *Cupp* v. *Campbell*, 103 Ind. 213; *Saulsbury* v. *Weaver*, 59 Ga. 254; *Veal* v. *Hurt*, 63 Ga. 728; *Way* v. *Peck*, 47 Conn. 23; *Athol Machine Co.* v. *Fuller*, 107 Mass. 438. "That the husband and wife both appear on the face of the papers to be principals, or that the parties dealt on the basis that both were principals, is of no consequence. Whether she was principal or surety will be determined not from the form of the contract, nor upon the basis upon which the transaction was had, but from the inquiry, Was the wife to receive, either in person or in benefit to her estate, or did she so receive, the consideration upon which the contract rests?" *Vogel* v. *Leichner*, *supra*, and cases cited above. In this case Mrs. Foster did not ask or negotiate for the loan, or exchange a word with Moulton in regard to it. She was simply present at the time and place appointed by Mr. Moulton and Mr. Foster, and signed the note and mortgage with, for, and by request of the husband, and he received every cent of the consideration. Not a penny of it was paid to her, nor did she or her estate receive a particle of benefit by reason of it. In fact, in substance, and in reality she was surety for her husband. The object of the disabling clause was to afford absolute protection to the wife's separate estate against the importunities of the husband. If regard were to be had to form merely, this object would be entirely defeated, for the same influences used to induce the wife to assume obligations for the husband would be as successfully employed to have the undertakings in the form desired.

As to the second point: The legislature evidently anticipated the question that might arise if the disability were made to depend upon the term surety, and so, to carry out their purpose and make the protection absolute, not subject to any formal or technical limitations, they added the clause, " nor any undertaking by her for him or in his behalf." The transaction constitutes an undertaking by her for and in behalf of her husband. There is no resemblance between this case and those of *Parsons* v. *McLane* and *Weaver* v. *McLane*, 64 N. H. 478. There the husband was on his death-bed, and destitute. The undertaking of the wife was to secure medical attendance. It was an independent undertaking of hers, which the husband did not solicit or know about, and in regard to which he assumed no obligation. It was the voluntary and independent undertaking of a wife to save her husband's life. Such an undertaking, as well as an undertaking for the necessaries of the family when the husband is destitute, may well be considered as undertakings in her own behalf.

The undertaking here was of no such nature. It was simply an undertaking to raise money to pay the husband's old debts. Nor was it a voluntary and independent undertaking on her part, without the solicitation or knowledge of the husband as in the cases distinguished, but it was a yielding to his importunities, and an undertaking with and for him. Those cases stand upon their own peculiar ground, and cannot be considered as authority for the plaintiff here.

The only findings of fact which afford the plaintiffs the show of a defence are as follows: That Moulton told Foster, when he applied for the money, that he would let his wife have it upon her note and mortgage; that Moulton understood that Mr. Foster was his wife's agent in the business; that he was not informed, and did not know, for what purpose the money was wanted; that he knew that Mr. Foster was financially irresponsible, and made the loan on the credit of Mrs. Foster and the security of the mortgage exclusively.

These facts are all immaterial and unimportant. Of what consequence is it that Moulton told Mr. Foster that he would let his wife have the money upon her note and mortgage? There is no pretence that he ever told Mrs. Foster, or in any way indicated, that he was dealing with her only. On the contrary, the case finds that he never had a word with Mrs. Foster about the transaction; that the note was signed by them both, apparently as joint principals; and that the money was paid by Moulton to Mr. Foster, although Mrs. Foster was present. This ill accords with the idea that he did not recognize Mr. Foster in the matter, and that he was dealing exclusively with the wife.

But suppose he had told Mrs. Foster that he was dealing with her exclusively as principal in the transaction. What would that amount to? Would it change the fact that she was only a surety, or that she was undertaking in behalf of her husband? Not by any means. The fact would remain the same, and the same consequences follow. *Orr* v. *White, Veal* v. *Hurt, Way* v. *Peck, Athol Machine Co.* v. *Fuller, supra.*

Of what importance is it that Moulton understood that Mr. Foster was his wife's agent in the business? It was only as agent to say that she would mortgage her property to pay his debts. If he understood that Foster was her agent to negotiate a loan for her benefit, then the understanding was totally without warrant. Certainly Mrs. Foster did nothing to authorize such an understanding. With Moulton she did not pass a word. With her husband she merely agreed "to mortgage her farm to pay his debts." If Foster said or did anything to authorize such an inference, the fact would be of no importance. "The understanding of the payee formed from the unauthorized representations of the husband at the time is not material." *Bank* v. *Buzzell*, 61 N. H. 189. The agreement was "to mortgage her farm for money to pay his debts."

Any representations by the husband at variance with this were unauthorized. Mrs. Foster was in fact a surety, in spite of Moulton's understanding. The fact must govern.

Neither is it of consequence that Moulton was not informed, and did not know, for what purpose the money was wanted. He should have inquired, and is charged with knowledge of the facts which prudent inquiry would have disclosed. *Cupp* v. *Campbell*, 103 Ind. 213; *Vogel* v. *Leichner, supra; Way* v. *Peck*, 47 Conn. 23; *West* v. *Laraway*, 28 Mich. 464; *Tracy* v. *Keith*, 11 Allen 214. In *Cupp* v. *Campbell*, the court said,—" One contracting an incumbrance on the estate of a married woman cannot deal with her at arms' end, knowing that she is married, and that by law she is prohibited from contracting as surety for her husband. He is bound to inquire concerning the consideration, and ascertain, if he may, by reasonable inquiry from her, whether it is for her benefit or the benefit of the husband, and he will be held to have acquired a knowledge of the facts which prudent inquiry would have disclosed."

In *Vogel* v. *Leichner* the court said,—" A person may not deal with a wife, knowing that she is married and unable to bind herself as surety for her husband, and, relying upon the form of the contract, assert that he had no knowledge of her actual relation to the transaction. He should have inquired. This is a just and reasonable rule. To hold otherwise would be practically to fritter away the whole beneficial purpose of the statute. If nothing more is necessary in order to bind the wife on her joint contract with her husband than that she sign a note or other obligation with him in such form as that both appear to be principals, or that the creditor should deal on the basis that both are principals without further inquiry or concern as to the fact, then the protection of married women afforded by the statute is a myth, and the removal of her disabilities a snare."

The fact that Moulton knew that Mr. Foster was irresponsible, and made the loan on the credit of Mrs. Foster and the security of the mortgage exclusively, can have no effect. If the liability of the wife were to turn upon any such consideration, the statute would be a dead letter. It is when the husband is irresponsible, so that the wife is the sole reliance of the creditor, that she most needs protection. The question is not whose signature induced the loan, whose credit the plaintiff relied upon for the ultimate satisfaction of his debt, but to whom did the consideration move, who was the beneficial party.

In *Luther* v. *Cote*, 61 N. H. 129, the plaintiff refused to sell the horse to the husband on his credit, and relied solely upon the wife. But it was not even suggested that this fact altered her relation to the contract, or made it binding upon her. So in *Bank* v. *Sanborn*, 60 N. H. 558, " the plaintiff knew the husband was insolvent, and, in taking the note, relied on the credit of the wife, based

on her separate estate." Nevertheless she had judgment. See, also, *Bank* v. *Buzzell, supra; Buss* v. *Woodward,* 60 N. H. 58; *Stokell* v. *Kimball,* 59 N. H. 13 ; *Farnham* v. *Fox,* 62 N. H.

DOE, C. J. As we understand the case, it is found as a fact that Mrs. Foster did not sign the note as surety for her husband, and that the money which she promised to repay was hired not by him as a principal, but by her. Her alterable intention to give him the money did not suspend her legal capacity to hire it. The case is determined by *Parsons* v. *McLane,* 64 N. H. 478.

*Judgment for the plaintiff.*

CARPENTER, J., did not sit: the others concurred.