Coos,
June 6, 1944. } No. 3469.

## White Mountain National Bank *v.* Emma Malloy.

*Robert Rich* (by brief and orally), for the plaintiff.

*Raymond Trainor* of Vermont, *Matthew J. Ryan, Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the defendant.

Page, J. The note upon which the plaintiff seeks to hold the defendant was given by her on June 1, 1939, with the estate of her husband, Thomas E. Malloy, as nominal surety. The note was a several-times-removed renewal of one given in exchange for, or in

payment of, an earlier note given in 1938 by the defendant to the plaintiff, in form as principal, and endorsed by the estate. This earlier note was findably a consolidation of four notes given to the plaintiff by the defendant. Of these four notes, two were given in payment of notes of 1931 upon which Thomas E. Malloy was the maker and the defendant was endorser. The other two originated in notes of 1937 signed by the defendant in form as maker, with Thomas E. Malloy in form as endorser. It is not explained why the formal status of the parties was changed between 1931 and 1937. It could be found that the original proceeds of all four of the notes were credited by the bank to Thomas E. Malloy and were used by him in his business, in which the defendant had no legal interest.

As to none of the notes on which the defendant's name appeared did the bank deal directly with Mrs. Malloy at any time prior to Mr. Malloy's death in 1938. Mr. Malloy brought in the notes, bearing her signature, and had the benefit of any cash or credit produced by them. He also paid the interest and some reductions of principal during his lifetime, and Mrs. Malloy paid nothing. Prior to Mr. Malloy's death, if the jury believed Mrs. Malloy, she never received from the bank any notice to pay interest or principal on any of the notes on which she was in form principal. No such notice was sent to her until after her husband's death, and not until after that time did she make any payment of either principal or interest. After Mr. Malloy's death, his administrators made one payment of interest. Thereafter Mrs. Malloy gave the plaintiff a note consolidating the former notes, in form as maker, with the estate as endorser, and from time to time renewed the note. She also made one or more payments, findably in the mistaken belief that her husband's estate was solvent and that she would be reimbursed, and, if the jury believed her, she thereby made no unexplained admission that she was principal rather than surety.

The statute provides that a married woman shall be liable upon her contracts except (1) when made with her husband, (2) when made as surety or guarantor for her husband, or (3) when the undertaking is made by her for or in behalf of her husband. R. L., c. 340, s. 2; *First National Bank* v. *Hunton*, 69 N. H. 509. The statute does not, however, prevent recovery from her where the contract is made by her as principal, even though she makes it with the aim of benefiting her husband. *White Mountain National Bank* v. *Noyes*, 81 N. H. 285, and cases cited.

The case last referred to illustrates, if it does not make clear, the

issue of fact presented where the question is raised as to the liability of the wife upon a note given by her to raise funds for her husband's use. That case was tried and submitted to the jury solely upon the question of fact whether Mrs. Noyes gave the notes as principal or surety. 367 Briefs and Cases, 195, 199, 203, 209. When the question came to this Court on the denial of motions for a nonsuit and for a directed verdict, the only question for decision was whether there was any evidence upon which reasonable men could find that Mrs. Noyes was principal rather than surety.

The fact that the wife is principal on the face of the instrument, while some evidence of the capacity in which she contracts, is not conclusive. She is not precluded, by her apparent position, from showing what her real position is. The trier of fact, if the apparent maker of the note claims to be only a surety, must upon a consideration of all the evidence, determine whether she is one or the other. *Farmington National Bank* v. *Buzzell*, 60 N. H. 189; *Parsons* v. *Rolfe*, 66 N. H. 620. The finding, if based on evidence, controls the result. *Jones* v. *Holt*, 64 N. H. 546; *Wells* v. *Foster*, 64 N. H. 585; *Iona Savings Bank* v. *Boynton*, 69 N. H. 77.

The exceptions to the denial of the plaintiff's motions to set aside the verdict and for judgment notwithstanding the verdict raise only the question whether there is any evidence that the defendant contracted with the plaintiff as surety for her husband or made a contract in his behalf. Upon the facts heretofore stated, we think that reasonable men could find in favor of the defendant, as to her liability to pay any of the notes given during her husband's lifetime. The abrupt exchange of the formal positions of the wife in 1937 and 1938, from that as surety (in which, on the face of things, the bank could not hold the wife) to that as principal being wholly unexplained, the plaintiff is left in the doubtful position of combatting the theory that the first formal position represented the reality, while the later one did not. The situation is emphasized by the fact that the bank could be found to have relied at every moment during Mr. Malloy's lifetime upon his credit and not at all upon the credit of Mrs. Malloy. Among the bank's papers was found and introduced a statement filed by Mr. Malloy in 1936, indicating an ample basis for credit, while the bank appears never to have investigated the credit of Mrs. Malloy, who in fact never had assets upon which to base credit. In this respect we have a situation that is the precise reverse of the *Noyes* case, where the husband had no property, while the wife did, and the contract with her as

maker could be found to have been in fact made with her as principal and not as surety.

The plaintiff excepted to the admission of evidence as to the transactions of the defendant's husband with the bank. The stated objection to this testimony was that when the defendant gave her note to the bank after her husband's death she impliedly agreed with the bank that this was her own undertaking. The objection is unavailing. If she gave the note after coverture was ended in consideration of the cancellation of the notes upon which she was not liable, the consideration was moral only, and not legal. Only in the few states that recognize moral consideration could she be held upon the note in suit, provided, as the jury has found, she was not liable on those given during her husband's lifetime. The great weight of authority is against recovery in such case. Williston and Thompson, Contracts (Rev. *ed.*), ss. 147–149, 156. Moral consideration is not recognized here, *Kent* v. *Rand*, 64 N. H. 45, 47. If the defendant could, after coverture ceased, have made a good contract with the bank to pay an existing debt of her husband's, rather than to pay a non-existent obligation of her own, it does not appear that she in fact did. Certainly the consolidated note given in 1938 is as explainable on the renewal theory as upon the theory of a new and different contract; it is not conclusively the latter. Findably the defendant was always surety, both before and after her husband's death.

Subject to exception the defendant was permitted to testify that she paid $150 on the notes, after her husband died and before the consolidation, and after learning from her son, one of the administrators of her husband's estate, that the estate was believed to be solvent and that she would be reimbursed. Subject to exception, the son corroborated these facts. The payment was made eighteen months before the petition was filed to have the estate settled in the insolvent form. The only objection advanced to the testimony is that the conversation between the defendant and her son, not having been communicated to the bank, could not affect the legal relations of the parties to this action. The evidence was offered and received for the sole purpose of showing the state of mind of the defendant when she made the payment. This was not a case where the state of mind of a party was sought to be shown in connection with the formation of a contract. Rather it was one of the circumstances surrounding and explaining the act of the defendant in making the payment. It had the sole purpose of rebutting any

claim by the plaintiff that the payment was an admission that the defendant was principal in fact. For the limited purpose for which it was received, the evidence was proper. Wig. Ev. (3d. *ed.*), *ss.* 581, 661; *Severance* v. *Carr*, 43 N. H. 65, 67; *Graves* v. *Graves*, 45 N. H. 323; *Hale* v. *Taylor*, 45 N. H. 405.

The plaintiff excepted to the admission of the testimony of its cashier that in 1937, when Mrs. Malloy became formally maker of two notes to the bank, the cashier had no doubt, as an officer of the bank, that Mrs. Malloy had no account in the bank, had never been in the bank, and did not have any property. The plaintiff's counsel argues that the financial worth of the defendant, whether known to the bank or not, could not affect the legality of her undertakings with the bank. But such knowledge had some bearing on the question whether the bank, under all the circumstances, loaned its money to Mrs. Malloy or to Mr. Malloy and his estate. If the argument of the plaintiff were followed, we should lose one of the main tests heretofore recognized in such cases; viz., to which person credit was actually given, whatever the form of the paper.

In the course of argument, defendant's counsel said: "Thomas Malloy was an old customer of that bank, been doing business with them for years. Why, he probably left that little White Mountain Bank thousands and thousands of dollars of his money." Upon objection, the Court gave the following instruction: "That shouldn't influence your decision, how much or how little money Mr. Malloy might have paid the bank. Exception noted to that statement." Defendant's counsel was amply justified by the evidence in arguing that Mr. Malloy had been doing business with the bank for years, but the statement about "thousands and thousands of dollars of his money" paid into the bank was improper. The only improper part of the argument the jury were told plainly to disregard.

Counsel then said: "He was a very extensive customer of the bank. The testimony —" Here he was interrupted, and said no more. He might properly have continued that it appeared from the testimony that for many years Mr. Malloy had to a considerable extent financed his business by loans from the bank, while there was no evidence that his wife did any business with the bank except to allow him to take in notes for such loans bearing her name. But we cannot know whether what he would have said would have been proper. The Court again, at this point, charged the jury: "You have been instructed that that is not to influence you in your decision, whether he did much business or whether he did little business,

but as bearing on the question of whose obligation it was you are entitled to consider how much business he did with the bank, and how much or how little she did with the bank. You are to consider it on that basis only." Again an exception was allowed to the plaintiff, but it avails nothing. *Buttrick* v. *Association*, 87 N. H. 194. As limited by the instructions the argument, minus the statement as to what Mr. Malloy deposited, was proper. There is no reason to suppose, in view of the denial of the motion to set aside the verdict, that the limitation was misunderstood or the instructions disobeyed to the prejudice of the plaintiff. *Davidson* v. *Corporation*, 89 N. H. 535, 538. To the extent that the argument was improper, it was perfectly clear that it did not have the sanction of the Court. *Heilman* v. *Whalley*, 90 N. H. 215.

*Judgment on the verdict.*

All concurred.