Coös,  
May 1, 1923.

FRED H. LAFFERTY *v.* JOHN H. HOULIHAN & *a.*

Every citizen has the right to call the attention of his fellow citizens to the mal-administration of public affairs or the misconduct of public servants, if his real motive in so doing is to bring about a reform of abuses, or to defeat the reëlection or reappointment of an incompetent officer.

Where the libelous character of a newspaper article is established, the motion of the defendant for a directed verdict must fail unless the evidence conclusively shows (1) that the articles were published upon a lawful occasion, that is, in good faith for a justifiable purpose, and (2) that the statements were either true or were published upon a belief in their truth founded on reasonable grounds.

Charges in a newspaper that a police officer has "admitted his guilt on a charge of lascivious behavior . . . and his guilt on a charge of conduct unbecoming a police officer" are libelous.

The drawing by counsel of an unwarranted inference from admitted or established facts furnishes no ground for setting aside a verdict, unless the court expressly or tacitly confirms his erroneous view.

Under the plea of *nolo*, the defendant does not confess or acknowledge the charge against him as upon a plea of guilty, but, waiving his right to contest the truth of the charge against him, submits to punishment; hence the defendant's motive in filing such a plea may be testified to by him where his explanation of his conduct as being consistent with his continued claim of innocence becomes material.

The practical conduct of a trial requires that there shall be a limit to inquiries upon collateral matters even though relevant; and the finding of the trial

justice thereon will not be disturbed unless it conclusively appears that injustice is done.

The question to the plaintiff, a police officer, on cross-examination, "do you think [with your record] you were fit to serve as an officer," is a matter of opinion which is neither competent nor helpful.

A charge is not erroneous which fully contains a correct statement of the law governing the case, though the principle is stated in one part of the charge with an unnecessary limitation.

CASE, for libel. Trial by jury and verdict for the plaintiff. Transferred by *Kivel,* C. J., upon exceptions to the denial of motions for directed verdicts by both the plaintiff and defendants and upon exceptions by the defendants to the admission and exclusion of evidence, to the arguments of opposing counsel and to the court's charge.

The plaintiff, a police officer of Gorham, had occasion in the night-time of December 31, 1920, to arrest two girls on a charge of larceny. One of them claimed to be under seventeen years of age. The officer, understanding that he could not lock her in a cell, took both prisoners to a hotel, where he was assigned connecting rooms. On the following morning, the prisoners were arraigned in the municipal court, and, upon pleas of guilty, were bound over to the April term of the superior court. In default of bail, both girls, then admitting that they were over seventeen years of age, were committed to jail. Upon an information filed by agreement of counsel on January 13 following, the girls were arraigned and sentenced. As a result of statements of the prisoners then made to the sheriff, an information was filed in the superior court against the plaintiff, charging him with lascivious and lewd conduct with one of the girls while they were in his custody at the hotel, to which the plaintiff pleaded not guilty. On January 19, after investigation and conference with the trial justice, and acting upon the advice of counsel, the plaintiff changed his plea from "not guilty" to "*nolo contendere*" and accepted sentence. A fine of $25, no costs, was imposed, the fine being suspended during good behavior.

The defendants are publishers of the Berlin Reporter, a weekly newspaper issuing from Berlin but having a large circulation in the adjoining town of Gorham. An account of the prosecution of the two girls had appeared in the paper. The libelous matter complained of was contained in two articles, (1) a news item and (2) an editorial, published on January 20 and 27 respectively, material portions of which are as follows:

(1)  "Policeman Pleads Nolo to Offence
Echo in Recent Theft Case of Furs
by Boston Girls is Heard by Local Judge.

Gorham Officer is not Suspended from Office.

Lafferty Fined $25 — Sentence Suspended
During Period of his Good Behavior.

Entrance into the bedchamber of two girls from Massachusetts at an early hour of the morning, hints that compliance with his demands might induce him to use his influence with the Judge before whom their cases were pending, and other improper conduct were the allegations Police Officer Fred Lafferty of Gorham met on Wednesday before Judge Marble.

A plea of guilty on appearing before the Judge in chambers saved this officer from more serious consequences that might have ensued. As it was, Lafferty pleaded 'nolo' and was fined $25, consideration being given to his wife and family; and the fine was suspended during the period of his good behavior. . . .

The police officer took connecting rooms; and the girls allege that Lafferty entered their chamber during the night, offered to use his influence conditionally, and acted in an otherwise improper manner. . . .

Police Officer Lafferty was later released on his own recognizance; and so far as can be ascertained was still on duty while awaiting a disposition of the case. No action has been taken, though much comment is circulating throughout the vicinity, regarding the propriety of his suspension from office while facing such a serious charge."

## (2)  "PUBLIC INDIGNATION A FACTOR.

Unless the administration of the law in Gorham is to be a standing disgrace to the State of New Hampshire, the proper authorities will at once request Police Officer Fred Lafferty to resign, or, in case of his refusal, remove him summarily from office.

A more disquieting situation could scarcely be found the country over.

Here is a man approximately 40 years of age, married, with a family, who has admitted his guilt on a charge of 'lascivious behavior' towards two young women in the silent hours of the night

at a Gorham hotel while they were in his custody as an officer of the law — and yet he is still a policeman. After alleging a variety of excuses for the prosecution of the case against him, and posing as a much injured man 'framed' by his enemies, the defense proves to be nothing but a shell that cracks under the enormity of his crime — but he returns to duty, so far as is known, with hardly a reprimand for his actions. . . .

Our readers are invited to put their own womenfolk metaphorically in the custody of such an officer for protection, with nothing but a few paltry dollars to keep him from straying off the path of duty once more. How does the prospect appeal to them? . . .

One is glad to give credit to the fine spirit of compassion which prompted . . . [the] light sentence — none is more sincerely sorry for the family of the officer than the average citizen; one also remembers the accusation under which his two prisoners' characters were clouded — though this could hardly be used as an extenuating circumstance for such libertine behavior.

Here is a blunt way of stating the case:

Lafferty, the representative of the law for Gorham, has been found guilty on his own admission of conduct unbecoming a police officer. In any city of size his suspension from duty would have taken place from the moment the charges were preferred against him; and he would have been dropped instantly from the force upon their substantiation. Yet at the time of writing, so far as one knows, he still holds office in Gorham, charged amongst other duties with the protection of women and children, in spite of a growing murmur of disapproval, however, that may reach the State Capitol before it subsides. . . .

But what shall be said of one who has proved false to his high public trust? . . .

It is not fair to the citizen to permit a man who has just returned home with a plea of guilty to lascivious behavior on his lips to retain the responsible position by his own admission thus violated.

These lines are impelled by a sense of public duty, and are written without desire to do otherwise than to right a wrong that will persist as long as the present status is undisturbed.

For the good of the community, Police Officer Fred Lafferty of Gorham should be at once replaced, either through his voluntary act or by request of the Selectmen. He has been treated leniently enough in Court; let him show his sense of what is due the community by surrendering his uniform."

At the time of the publication of the news item of January 20, the plaintiff was still serving as a police officer of Gorham. His resignation was filed and accepted by the town on January 22, five days before the publication of the editorial of January 27, calling for his resignation or summary removal from office. The defendants learned of the resignation before the issue of the paper, and inserted on the front page thereof an item calling attention to the fact.

The plaintiff alleges that the defendants wilfully, maliciously and unlawfully published said articles, falsely accusing him of crime. The defendants, by brief statement, under the general issue, say:

"1. That said articles were true.

2. That in publishing said articles they, said defendants, were not actuated by malice or ill-will towards the plaintiff, but their only purpose was to give useful information to the town of Gorham and to the community, and to those who had the right and ought to know, in order that they might act on such information.

3. That at the time of said publication of said articles the plaintiff was a police officer in the town of Gorham, and that the defendants, without malice or ill-will, believing and having probable cause to believe said articles to be true, published the same for the sole purpose of informing the people in the town of Gorham of the misconduct of the plaintiff.

4. The defendants also aver that the publication of said articles was only just and fair criticism of the plaintiff while acting as a public officer; and that said criticism was made upon a lawful occasion, upon probable cause and from good motives."

Other facts appear in the opinion.

*Shurtleff, Oakes & Hinkley* (*Mr. Oakes* orally), for the plaintiff.

*Sullivan & Daley* and *Rich & Rich* (*Mr. Sullivan* orally), for the defendants.

SNOW, J.  "Conductors of the public press have no rights but such as are common to all. . . . But in this country every citizen has the right to call the attention of his fellow citizens to the maladministration of public affairs or the misconduct of public servants, if his real motive in so doing is to bring about a reform of abuses, or to defeat the re-election or re-appointment of an incompetent officer." *Palmer* v. *Concord,* 48 N. H. 211, 216.  "If the end to be

attained is justifiable; as, if the object is the removal of an incompetent officer, or to prevent the election of an unsuitable person to office, or, generally, to give useful information to the community, or to those who have a right and ought to know, in order that they may act upon such information, the occasion is lawful, and the party may then justify or excuse the publication. Where, however, there is merely color of a lawful occasion, and the party, instead of acting in good faith, assumes to act for some justifiable end merely as a pretense to publish and circulate defamatory matter, or for other unlawful purpose, he is liable in the same manner as if such pretense had not been resorted to." *State v. Burnham,* 9 N. H. 34, 41, 42. "In order to settle whether the occasion was lawful we must generally inquire into the motives of the publisher. There may be some cases where the occasion renders not only the motive but the truth of the communication immaterial. Thus it may be the better rule that no relevant statement made by a witness or by counsel in the course of a trial is actionable, even though false and malicious. . . . But in the great majority of instances, . . . the lawfulness of the occasion depends upon the good faith and real purpose of the publisher. Most of what are called 'privileged communications' are 'conditionally,' not 'absolutely,' privileged. 'The question is one of good faith' or motive, and can be settled only by a jury. A court cannot rule that a communication is privileged without assuming the conditions on which it is held to be privileged, namely, that it was made in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds, of its truth." *Palmer* v. *Concord, supra,* 217; *Carpenter* v. *Bailey,* 56 N. H. 283, 290; *Hutchins* v. *Page,* 75 N. H. 215, 216. "If the defendant cannot justify, he may show matter of excuse. . . . Matter in excuse, in a prosecution for a libel, is where the defendant, upon a lawful occasion, proceeded with good motives — upon probable grounds — upon reasons which were apparently good, but upon a supposition which turns out to be unfounded." *State* v. *Burnham, supra,* 43. "And the question is, whether the mere fact, that the defendant had been informed and believed that a fact was so, is equivalent to having probable cause to believe it to be so. And we think it could not be assumed that it was so. . . . The question for the jury would be, not whether the defendant believed it, but had he probable cause to believe it? There might be belief without probable cause for it; and hence it would not be sufficient to allege merely information and belief, because that might not, in

a given case, amount to probable cause." *Carpenter* v. *Bailey,* 53 N. H. 590, 595.

Publication of the articles in question being admitted and their libelous character being self-evident, it follows from the foregoing authorities that the defendants' motion for a directed verdict must fail unless the evidence conclusively shows (1) that the articles were published upon a lawful occasion, that is, in good faith for a justifiable purpose, and (2) that the statements were either true or were published upon a belief in their truth founded on reasonable grounds.

The evidence does not conclusively prove the existence of a lawful occasion. On the other hand, there is evidence from which bad faith and an unjustifiable purpose could be found. The plaintiff testified that one of the defendants was not on speaking terms with him because of a heated argument which occurred some three years before. The articles themselves, the severity of the language used and the manner in which the articles were displayed in the columns of the Reporter, were competent evidence of the motive and purpose of the publishers. *Palmer* v. *Concord, supra,* 217. The editorial of January 27, calling for the resignation or summary removal of the plaintiff from office, was published five days after the plaintiff had ceased to be an officer and after the defendants had been informed of that fact. Lack of good faith and the absence of a justifiable purpose could be readily inferred from such evidence. The defendants' testimony that they did not learn of the resignation until the day before the distribution of their paper, after the section containing the editorial had been set up and printed and too late for its omission, did not conclusively establish their good faith and a justifiable purpose in distributing libelous matter after the ostensible occasion for it had ceased. The head-lines and the vigorous language of the articles, in view of the evidence of existing hostility, would support a finding that the defendants' persistence in unseasonably publishing the editorial was prompted by ill-will under color of a lawful occasion, rather than by a desire to issue their paper on schedule time. The simultaneous publication of a note upon the front page of the newspaper calling attention to the resignation was at best evidence of such good faith, but was not conclusive.

It is equally clear that the evidence conclusively establishes neither the truth nor a reasonable belief on the part of the defendants in the truth of the statements complained of. Among the published statements claimed by the plaintiff to be false and more particularly relied upon were these: (1) in the news item, "A plea of guilty . . .

saved this officer from more serious consequences . . .," and (2) in the editorial, "Here is a man . . . who has admitted his guilt on a charge of 'lascivious behavior,'" "Lafferty, . . . has been found guilty on his own admission of conduct unbecoming a police officer," and ". . . a man who has just returned home with a plea of guilty to lascivious behavior on his lips . . ." The defendants contend that the truth of these statements that plaintiff had admitted his guilt is conclusively established by the record of the plaintiff's plea, but that whether the statements were true or false, they believed them to be true, and that their belief was conclusively shown by the plea supplemented by information obtained from the court officers and the plaintiff's counsel. The record does not support the defendants' contention. "The plea of *nolo contendere* is not an admission of truth of the facts charged for other purposes than for those of the case in which it is made." *Collins* v. *Benson, ante,* 10; *State* v. *LaRose,* 71 N. H. 435, 440. "Under the plea of *nolo,* the defendant does not confess or acknowledge the charge against him as upon a plea of guilty, . . . but, waiving his right to contest the truth of the charge against him, submits to punishment. The plea is in the nature of a compromise between the state and the defendant — a matter not of right, but of favor. Various reasons may exist why a defendant conscious of innocence may be willing to forego his right to make defense if he can be permitted to do so without acknowledging his guilt. . . . 'This plea, like a demurrer, admits for the purposes of the case all the facts which are well stated, but is not to be used as an admission elsewhere.' *Commonwealth* v. *Tilton,* 8 Met. 232, 233; 1 Gr. Ev., *s.* 179; *Ib., s.* 537, *n.* 1; 1 Bish. New Cr. Proc., *s.* 802." *State* v. *LaRose, supra,* 438, 439. So far as the defendants' belief or reasonable ground for belief in the truth of such statements was based upon information claimed to have been obtained by them from the sheriff, county solicitor and the plaintiff's counsel, the evidence was conflicting and at best presented a question of fact for the jury. There was no error in the denial of the defendants' motion for a directed verdict.

The defendants excepted to inquiry of the plaintiff upon direct examination as to his object in changing his plea from "guilty" to "*nolo contendere.*" The inquiry was admissible because the defendants sought to impute to the plaintiff a motive in his change of pleading and also to draw inferences of fact therefrom. The defendants had stated in the news item that "a plea of guilty [referring to the plea of *nolo*] on appearing before the judge in chambers saved

this officer from more serious consequences that might have ensued," carrying the imputation that the plea was a confession of guilt made for the purpose of avoiding conviction and punishment. Plaintiff's answer tended to show that his only objects were to save expense and avoid notoriety and that the imputed charge was false. The defendants claim that their statements that plaintiff had admitted his guilt were a fair inference from his conduct in his negotiations with the solicitor resulting in changing his plea. The plaintiff's answer was an explanation of his conduct consistent with his continued claim of innocence. The question was clearly admissible. The recital in his answer of what others advised him was irresponsive, and, being permitted without objection, the error, if any, is not now open to the defendants.

The defendants excepted to the exclusion of a question put to the plaintiff upon cross-examination, "Now, with that kind of a plea and with that record in the superior court against you, do you think you were fit to serve as an officer in the town of Gorham, or anywhere else, for the enforcement of law?" The evidence was offered on the question of damages. The plaintiff's fitness or unfitness for the position, as disclosed from his plea and record in the superior court, was a deduction from the evidence and, if material upon any issue, was for the jury. The opinion of the witness would have been neither competent nor helpful. Whether, on other grounds, such inquiry should have been permitted in cross-examination, was for the trial court.

Plaintiff testified upon direct examination that he and one of the defendants had had difficulties growing out of a heated argument over the Boston police strike in 1919, since then they had not spoken until they met in the court-room. Upon cross-examination, the plaintiff had stated that his position in the discussion had been that there should have been no outside interference by chambers of commerce in other cities. He was then asked, "You claimed that the policemen had a right to strike?", "What was your controversy about?", and "Give the details fully." Exception was taken to the exclusion of the first question, and the defendants understood that their exception also covered the exclusion of the last two questions. The relative positions of the parties and which one was right in the controversy were immaterial issues. The intensity of the defendants' hostility for the plaintiff engendered by the argument was, however, a very material fact, and the details of the quarrel tending to show whether it was trivial or not might have thrown light

on this fact. But the practical conduct of a trial requires that there shall be a limit to inquiries upon collateral matters, even though relevant. This limit must necessarily be fixed by the trial justice in each case, and his finding will not be disturbed unless it conclusively appears that injustice is done. *Sterling* v. *Warden,* 52 N. H. 197, 201; 2 Wigmore Evidence, s. 951. It does not appear that the exclusion of the questions could have resulted in any injustice to the defendants. The defendant, party to the argument, was later allowed to testify fully as to the details of the discussion and to the absence, on his part, of hostility arising therefrom.

The two girls were important witnesses for the defendants. One of them, Mary McGuire, who, while at Berlin, had gone under the name of Mary O'Brien, testified that she later returned to that section of the state with the intention of marrying a Mr. Irving of Groveton. On cross-examination, she reluctantly admitted that while at Groveton, she had her mail come addressed to her as Mrs. Irving and that she "used that name." Exceptions were taken to statements of the plaintiff's counsel in closing argument attacking her credibility. The language of counsel, the exceptions taken and the remarks of the court, so far as material, were as follows: Counsel: "They [the two girls] lied about their family — the mother that brought her into the world, and the father who had taken care of her. If she will lie about them, won't she lie about perfect strangers that arrest her and prosecuted her? Is n't it reasonable she would lie about it? She says she went into a house in Boston, Cambridge and Brookline, and gave false names. They lied about their age. They did n't like this country. Brother Rich got them to say that they wanted to go home because they did n't like the country, but one of them liked it well enough so that she came up here to Groveton and lived with a man as his wife — took his name. . . . Exception. Mr. Hinkley: The evidence is that she took his name — I think that is all, but I think it is a fair inference. . . . (Exception.) Mr. Hinkley: She took his name and posed as the wife of that man, — at least to her friends from whom she was getting mail." The Court: "You will recollect the evidence, gentlemen, as it was stated, and if counsel insists on arguing that point, I shall tell you to disregard what he says, so far as basing his argument on what he has now stated. There is evidence that she took another name for mail that came to her. . . ." Counsel: "That is all I intended to argue, that she took his name and represented herself as his wife." The Court: "Did she say that? Do you wish it to

stand?" Counsel: "Why, I am not particular about it, Your Honor." The Court: "It is for you to say." Counsel: "I may be drawing an inference that is not properly drawn from that evidence." (Exception allowed.) Counsel did not withdraw his remarks. Except as above, no instructions were given, and none were requested by either counsel. The court refused to find that the trial was not rendered unfair by the objectionable statements.

Defendants' exceptions to the argument do not present a ground for setting aside the verdict. Upon the defendants' objection to the expression she "lived with a man as his wife," counsel promptly admitted that the only evidence was that she "took his name," and justified his statement as a fair inference. The court, addressing the jury, repeated the substance of the evidence, whereupon counsel declared that "that is all I intended to argue." These comments, followed by the suggestion of counsel that he might be "drawing an inference . . . not properly drawn from that evidence," make it clear that the several statements objected to were intended as inferences from the evidence, and the jury must have so understood. *State* v. *Ketchen*, 80 N. H. 112. The drawing by counsel of an unwarranted inference from admitted or established facts furnishes no ground for setting aside a verdict, unless the court expressly or tacitly confirms his erroneous view. *Mitchell* v. *Railroad*, 68 N. H. 96, 117; *Story* v. *Railroad*, 70 N. H. 364, 376; *Connecticut River Power Co.* v. *Dickinson*, 75 N. H. 353, 358; *Potter* v. *Moody*, 79 N. H. 87, 88. Therefore even if the inference drawn by counsel were unwarranted, the defendants take nothing by their exception, since such inference was not confirmed by the court. On the contrary, the court told the jury that if counsel insisted on arguing his point he, should tell them to disregard counsel's statement.

The court, following substantially the words of the written request of the defendants, instructed the jury as follows: "In this country every citizen has the right to call to the attention of a fellow citizen mal-administration of public affairs or the misconduct of a public officer, if his real motive in so doing is to bring about reform of abuses or defeat the reëlection of an incompetent officer, or to remove such incompetent officer.

If you find that the defendants, in good faith, had in view the removal of the plaintiff from office and the controlling, moving purpose of the articles was to inform the citizens of Gorham of the manner in which the plaintiff was conducting himself as a police officer, and to urge his removal, then the motive was justifiable,

and your verdict would be for the defendants." The defendants except to a proviso added by the court to the foregoing, to wit, "provided, you should find that the plaintiff was an incompetent officer, and that the articles contained the truth in regard to him, and were published on a lawful occasion, and the defendants were justified in publishing them."

The grounds of the objection advanced by the defendants is that the instructions as qualified required them to prove the truth of the charges in their publication, whereas the occasion being lawful and their motives good, it was enough that they had probable cause to believe and did believe in their truth. It is a sufficient answer to this objection that the defendants by plea and by evidence had undertaken to support the truth of the charges made against the plaintiff in their publication, among which by inference were charges of incompetence. The instruction as given is not inconsistent with the request as made in view of the defendants' plea and proof. The real quarrel of the defendants with the charge is not because it did not comply with their request nor because it did not state the law correctly as far as it went, but because the principle stated was unnecessarily limited by the proviso. It cannot be assumed, however, that the defendant was injured, since the charge, both before and after the clause in question, stated in substance the principle for which defendants now contend, namely, "Even though the articles in question are not true, if you find that the defendants had probable cause to believe they were true, and if you find they were published upon lawful occasion, from good motives, the defendants are excused." The legal principle contended for having been correctly stated, exception does not lie because of the order in which it appears in the court's charge.

The conclusion reached makes it unnecessary to consider the plaintiff's exceptions.

*Defendants' exceptions overruled.*

PLUMMER, J., was absent: the others concurred.