Hillsborough, } No. 3056.
May 2, 1939. }

VERA H. HEILMAN *v.* JAMES E. WHALLEY.

FRED G. HEILMAN *v.* SAME.

FRED G. HEILMAN, JR., *by his father and next friend,* FRED G. HEILMAN

*v.*

SAME.

*Warren, Wilson, McLaughlin & Wiggin,* and *Devine & Tobin* (*Mr. Wiggin* orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

BRANCH, J.   The defendant's exceptions will be considered in the order in which they have been argued in his brief.

1. During the argument of plaintiffs' counsel to the jury, the following proceedings took place:

"Gentlemen, the answer to the argument which has just been made in behalf of Mr. Whalley is very, very obvious when you stop to think of it.   If Mr. Whalley does not admit liability, if he did not admit liability, then why in his behalf should my Brother Booth devote so much of his argument to the amount of damages?

"*Mr. Booth:* Objection and exception.

"*The Court:* Of course that is no admission of liability.

"*Mr. McLaughlin:* No, your Honor.   My statement is that if they deny liability, why did he talk about damages?

"*The Court:* It is perfectly proper for counsel to discuss damages even though they do not admit liability.

"*Mr. McLaughlin:* I am not impeaching anybody for that, your Honor.

"*The Court:* Go ahead.

"*Mr. Booth:* Note my exception.

"*Mr. McLaughlin:* It is part of the jury's duty to consider the witnesses upon the stand. Yes, and I think these are my brother's own words, to consider the evidence and the conduct of the parties, and may I add, the conduct of the witnesses and of the attorneys as well, and I argue that if my brother did not recognize the serious question of liability, if Mr. Whalley did not recognize his fault, would they say anything about damages? They'd never reach that question.

"*Mr. Booth:* Exception, your Honor.

"*The Court:* Just a minute. I think that's pretty dangerous argument. It is perfectly proper for counsel, even though they deny liability, to argue damages. That is proper on the question of the amount of damages. It is proper in any event, and I shall so instruct the jury.

"*Mr. McLaughlin:* I am not arguing that it is improper for my brother to argue damages, but I am just arguing to you to consider the weight which he gives to that question.

"*Mr. Booth:* I except to that, also to repetition of it.

"*The Court:* Exception noted."

In support of his contention that because of this occurrence the verdict must be set aside, the defendant now argues as follows: "In the recent case of *Mann* v. *Company, Inc.,* 90 N. H. 1 and *Ferris* v. *Saulnier,* 90 N. H. 96, it has been definitely decided that it is improper to argue to the jury that a vigorous defense on the issue of damages warrants the inference that the defendant lacks confidence in a defense on the issue of liability." In thus arguing, defendant's counsel apparently lose sight of the rule that "exceptions of this kind, although commonly called exceptions to argument, in reality involve not the conduct of counsel in making the argument, but the action of the court in permitting it to stand." *Salvas* v. *Cantin,* 85 N. H. 489, 491, and that such an exception cannot be sustained unless it is shown that the argument received "the express or tacit sanction of the court." *Ib.*

It is impossible to spell out of the above excerpt from the record any sanction of the plaintiff's argument by the trial court. On the contrary, the court expressed its disapproval of the argument in

terms almost as emphatic as those used in *Lafferty* v. *Houlihan*, 81 N. H. 67, 77. There was in this case no ruling of the court allowing the questioned argument to which exception could be taken. For this reason, if for no other, the exception claimed by the defendant is unavailing.

We do not care to rest our decision solely upon this ground, however, for the evidence in this case furnished a basis for the argument which was not present in either of the cases relied upon by the defendant, and we think that the record fully warranted the argument. It was admitted by the defendant that he ran by a stop sign at the intersection where the accident occurred and there was evidence that he said immediately after the accident, "I'm sorry. It's my fault." In this state of the proof the argument that the defendant had admitted liability and that this explained the emphasis of counsel upon the question of damages was not improper.

2. During the cross-examination of the plaintiff Fred G. Heilman, Jr., counsel for the defendant sought to show that he had made statements in his report of the accident to the commissioner of motor vehicles which were inconsistent with his testimony on the stand. Counsel for the plaintiff thereupon requested that the whole report be submitted to the jury. Defendant's counsel refused to comply with this request and was permitted by the court to continue his examination with reference to the alleged contradictory statements in the report. Upon re-direct examination counsel for the plaintiffs offered the report in evidence, but upon objection by the defendant, withdrew the offer with the statement, "I'll leave it just where my brother left it." . Subsequently, during the argument of plaintiffs' counsel to the jury, the following proceedings took place: *Mr. McLaughlin:* "Who's being fair? Who puts in all the evidence before you? Who lays all the cards on the table and says 'That's our claim, Gentlemen.' Who submits just an excerpt from a report? Is that fairness as we in a court of justice understand it?

"*Mr. Booth:* Objection. The excerpt from the motor vehicle report was sustained by the court. I stand on my legal rights and except.

"*The Court:* What do you object to?

"*Mr. Booth:* I refer to the Court's exclusion of a portion of the motor vehicle report. It was properly excluded.

"*The Court:* You object to just the excerpt?

"*Mr. Booth:* I object to the argument, based on the court's exclusion of parts of that report. We object and except to it.

"*The Court:* Do you want it to stand, Mr. McLaughlin?

"*Mr. McLaughlin:* Well—

"*The Court:* You may withdraw it if you wish.

"*Mr. McLaughlin:* I'll withdraw it.

"*The Court:* The jury will pay no attention to it."

The plaintiffs contend that if the foregoing argument was in any way improper, the harm was cured by its withdrawal and the court's instruction to the jury to disregard it. In view of the subsequent denial of the defendant's motions to set aside the verdicts, this argument appears to be well founded.

It should not be assumed, however, that the argument was improper or that the court would have fallen into error if it had been allowed to stand. When counsel for the plaintiffs first suggested that the report be marked as an exhibit, defendant's counsel said: "This is the way I choose to examine the witness. If you don't like it . . . ." Counsel for the plaintiffs may well have felt that this remark was both arrogant and supercilious. Some comment upon it was expectable and the entire colloquy between counsel constituted an incident of the trial upon which comment was not improper. It cannot be assimilated to an orderly discussion of the admissibility of evidence between court and counsel. The attempt of defendant's counsel to construe the argument as a criticism of the court's ruling which permitted the cross-examination to proceed was not justified by the language used. Therefore even if the argument had not been withdrawn it might well be held, in accordance with the rule which was recently stated and applied in *American Employers' Ins. Co.* v. *Wentworth, ante,* 112 that the defendant took nothing by his exception to its allowance.

3. Certain x-ray plates having been marked as exhibits, counsel for the plaintiffs argued as follows:

"Gentlemen, on the question of those x-ray plates, consider whether you yourselves or any layman can see the width of the sacroiliac joint as shown by Plate No. 7 on the left-hand side is any different or wider than the joint as shown on the right-hand side. Look at that plate and remember what the testimony was. I want to say now, referring to Plate No. 7. Look at it and recall all of the testimony of all the doctors before you make up your minds.

"*Mr. Booth:* If my brother is attempting to argue that that x-ray shows anything in support of his claim for injury, I must object, because the doctor has definitely testified that it does not.

"*The Court:* Go ahead.

"*Mr. Booth:* Exception."

This exception was based upon the statement of the plaintiffs' doctor, repeated several times upon cross-examination, that while one of the x-ray plates showed a variation in the width of the sacro-iliac joint on the right and left side, he "wouldn't say" that it was "positive." "It does show a variation, but I don't think it is enough to definitely say that it is abnormal." It was a fair conclusion from the entire testimony of this witness that while the x-rays were inconclusive in themselves, they were nevertheless consistent with his diagnosis made upon physical examination. Under these circumstances it cannot be said that the somewhat obscure reference of counsel thereto was erroneously allowed.

4. The defendant, having been called as a witness by the plaintiffs, was cross-examined by his own counsel as follows:

"Did you ever tell young Heilman that this accident was your fault? A. No, sir. Q. Why not? A. Because it wasn't my fault. Q. What was the situation there as you saw his car coming? A. After the collision when he hit my right end he went across the street diagonally. I dismounted from my car on the left-hand side and stood there. Mr. Heilman came running over, very excitedly, and my recollection is that he asked me if I was insured. *Mr. McLaughlin* and *Mr. Booth:* Objection. *The Court:* Go ahead. A. (Witness continues.) That's the extent of my conversation with Mr. Heilman. I told him I was. *In Chambers. Mr. Booth:* The Defendant Whalley moves for a mistrial. *The Court:* The motion for mistrial is denied on the ground that the question did not elicit the answer, and that the defendant Whalley volunteered the information. *Mr. Booth:* Exception."

The finding of the court "that the defendant Whalley volunteered the information" which is fully sustained by the testimony of the defendant subsequently taken in chambers, requires the overruling of this exception in accordance with the decision in *Damboise* v. *Goodman*, 86 N. H. 360. "There is no rule of law which requires that a party be given protection against the results of his own indiscretions on the witness stand unless they are of such a character as to render the trial unfair." *Ib.* 361. As in the case last cited, the action of the court in denying the motions to set aside the verdicts, was equivalent to a finding that the defendant had a fair trial.

5. The plaintiff, Vera H. Heilman, claimed to have suffered an injury to her left kidney as a result of the accident. A physician called as a witness by the defendant testified upon direct examina-

tion that he had been informed that two urinalyses were made at the hospital and he was examined without objection as to the contents of the first report. Upon cross-examination he stated that he had in his possession a copy of the second report and was then asked how the two reports differed. To this question the defendant objected upon the ground that "He is trying to get in the reports of someone who is not in court. They weren't made by him. All he has is what was told him." After extended discussion in the judge's chambers, the question was admitted and the defendant excepted. The answer was, in substance, that there were no significant differences between the two reports, and the defendant has wholly failed to suggest any theory upon which it was prejudicial to him. The exception may, therefore, be overruled upon the ground that if any error was committed, it was harmless.

It is not necessary, however, to rest our decision solely upon this ground. The two reports came from the same source and were apparently of equal authenticity. The witness had had both reports in his possession. Under these circumstances we think that by putting in the contents of the first report through his witness and broaching the subject of the second report through the same witness, the defendant opened the door to cross-examination as to the contents of the second report and upon this ground the admission of the testimony was proper.

6. The defendant seasonably requested the court to charge the jury as follows:

"16. There is no evidence in this case that the kidney condition which Dr. Holmes says Mrs. Heilman suffers from either was caused directly by an injury received in the accident or is the result of a previously existing kidney condition which was aggravated by an injury received in the accident."

This request was denied and the defendant excepted.

This exception must be overruled. There was abundant evidence which need not be recapitulated here, as to the nature and extent of Mrs. Heilman's injuries, from which an inference of injury to the kidney might properly be drawn.

7. The defendant also filed two requests for instructions to the effect that the plaintiff had not established that Maple Street was a through way, and excepted to the denial thereof by the court. The case was tried throughout by both parties upon the assumption that Maple Street was a through way. Two witnesses testified specifically to this fact without objection. The applicable ordinance

of the city of Manchester was introduced in evidence and the erection of a stop sign of the standard type at the corner in question was proved by the testimony of the foreman of the highway department under whose supervision the work was done. In his argument to the jury counsel for the defendant made the following statement with reference to the conduct of the plaintiff Fred G. Heilman, Jr.: "He was traveling on a through way, yes. He was traveling on a highway here that was protected by stop signs, but he was driving without any heed to the possible presence of other cars."

To rule at the end of a trial conducted as above described, that a fact about which no one had expressed the slightest doubt had not been "established" would have been contrary to any rational conception of judicial procedure as a means of ascertaining the truth. The evidence amply warranted a finding that Maple Street was a legally established through way even if its designation as such had not been established with technical exactitude. The exception to the denial of these requests is therefore overruled.

An examination of the record discloses numerous other exceptions which adequately indicate the irritation of counsel at the time they were taken, but none have been discovered which indicate that the legal rights of the defendant were invaded. They are therefore overruled.

*Judgments on the verdicts.*

All concurred.