Hillsborough
No. 79-046

<span style="text-align:center">JOAN BLAIS</span>

<span style="text-align:center">v.</span>

<span style="text-align:center">TOWN OF GOFFSTOWN</span>

<span style="text-align:center">August 17, 1979</span>

*Cullity & Kelley*, of Manchester (*George Roussos* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green*, of Manchester (*James Q. Shirley* orally), for the defendant.

GRIMES, J.  The principal issue of law presented in this case involving personal injuries sustained by the plaintiff during an attack by a police dog owned by the defendant town is whether the trial court erred in ruling that the plaintiff could not avail herself of the statutory causes of action provided for by RSA 466:19 and :20, collectively the so-called "dog bite statutes." We overrule the plaintiff's exceptions and hold that no error was committed.

Read in the light most favorable to the defendant, who received the jury verdict below, *Walker v. Walker*, 106 N.H. 282, 287, 210 A.2d 468, 471–72 (1965), the record would support the following findings of fact. On April 15, 1975, shortly after midnight, the plaintiff was stopped by Officer Robert Jardine of the Goffstown Police Department for operating a motor vehicle through an intersection against a red light. Plaintiff's husband was a passenger in her automobile. With Officer Jardine, but remaining in the police cruiser, was a German Shepherd police dog owned by the defendant town and cared for by Officer Jardine.

During the officer's questioning of the plaintiff, her husband, who apparently was intoxicated, left the vehicle and became verbally abusive of the officer. After Mr. Blais refused to abate the verbal and physically threatening demonstrations, Officer Jardine attempted to place him under arrest for disorderly conduct. Mr. Blais, however, refused to cooperate and a fight ensued. At some point, the plaintiff left her car and walked back towards the fight. Officer Jardine, aware of his dog's excited state, ordered the plaintiff to return to her vehicle. The plaintiff denies having heard such an order.

According to Officer Jardine, the plaintiff grabbed him around the throat and tried to pull him away from her husband. Officer Jardine gave the attack command to his dog. The dog leapt from the cruiser and attacked the plaintiff, biting her right leg. The dog was soon returned to the police cruiser by a newly arrived police officer who had heard an emergency call that Officer Jardine had broadcast on his walkie-talkie. The new officer escorted the plaintiff to her vehicle and then tried to assist his fellow officer in subduing Mr. Blais.

The record would support a finding that, despite repeated warnings to remain in her car, the plaintiff again returned to the site of the fight, which, incidentally now involved five policemen as well as Mr. Blais. The dog saw her going toward Officer Jardine and again attacked. As a result of the two successive attacks, the plaintiff suffered multiple lacerations and permanent scarring on both legs.

The plaintiff's amended writ states two counts, one in ordinary negligence, the other based on RSA 466:19 and :20. Although allowing the amendment, the trial court ruled over exception that the plaintiff

could not avail herself of the statutory causes of action set forth in RSA 466:19 and :20, and the case went to the jury solely on the issue of negligence. Following a verdict for the defendant town, *Souter*, J., transferred plaintiff's exceptions.

The plaintiff first contends that the court committed reversible error in withdrawing from the jury her statutory claim based upon RSA 466:19 and :20. Section 19 reads as follows:

> Any person to whom or to whose property damage may be occasioned by a dog not owned or kept by him shall be entitled to recover such damage of the person who owns or keeps the dog, or has it in possession, unless the damage was occasioned to him while he was engaged in the commission of a trespass or other tort.

Section 20 provides for double damages in actions brought for damage done by dogs. The plaintiff's position is that application of the dog bite statute is required by a fair reading of RSA 412:3 (Supp. 1977), relating to a limited waiver of municipal immunity by acquisition of insurance, and by sound public policy.

■ Prior to the incident giving rise to this case, the town of Goffstown procured liability insurance pursuant to the limited legislative waiver of municipal immunity contained in RSA 412:3 (Supp. 1977). We cannot accept the theory advanced by the plaintiff that the legislature, by enacting RSA 412:3 (Supp. 1977), intended to create substantive causes of action where none had existed before. If the plaintiff has a valid cause of action under the dog bite statutes, RSA 466:19 and :20, it will be because those statutes themselves create the cause of action and not because another statute, here RSA 412:3 (Supp. 1977), partially waives a judicially conferred defense to general tort liability.

Read in the literal sense, the dog bite statute would apply to *any* "person who owns or keeps [a] dog." RSA 466:19. The critical question, therefore, is whether the legislature intended that municipalities employing police dogs be within the purview of the act.

■ Generally "the intention of the legislature as expressed in the statute is the touchstone to its meaning." *Ahern v. Laconia Country Club, Inc.*, 118 N.H. 623, 624, 392 A.2d 587, 588 (1978). But "if the literal meaning of particular words is inconsistent with the general purpose, or . . . is inconsistent with a well settled principle of law of general application, there is grave reason to doubt whether the literal sense is the sense intended by the legislature." *Quimby v. Woodbury*,

63 N.H. 370, 374 (1885). Thus, for example, this court has held that despite the absolute language of the predecessors of RSA 466:19 and :20 (Laws 1851, ch. 1124 and Laws 1863, 2753:1 respectively), "a construction of the statute making the owner of a dog absolutely liable for injuries, regardless of the conduct of the party injured, . . . would be unreasonable." *Quimby v. Woodbury*, 63 N.H. at 374. And in *Gagnon v. Frank*, 83 N.H. 122, 139 A. 373 (1927), the court stated that RSA 466:19 and :20 "[do] not confer a right of action on all persons indiscriminately." *Id.* at 123, 139 A. at 374. Similarly in the present case, we hold that the subject statutes are inapplicable to suits against municipalities for injuries suffered from their reasonable use of police dogs.

██ ██  Several factors convince us that this interpretation is the proper one. First, keeping in mind that the sweeping language of the dog bite statutes demands "reasonable interpretation," *Noyes v. Labrecque*, 106 N.H. 357, 358, 211 A.2d 421, 422 (1965), we think it would be less than reasonable to believe that in 1851, when to our knowledge municipal police forces were not using attack dogs, the legislature intended to include municipal owners of police dogs within the definition of an "owner or keeper of [a] dog." RSA 466:19. Second, as municipalities at that time enjoyed near-complete immunity from suits sounding in tort, *Gossler v. City of Manchester*, 107 N.H. 310, 221 A.2d 242 (1966), it is unlikely that the legislature intended the result argued by the plaintiff. *See* 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 50.01 (4th ed. 1973). The trial court quite properly noted that the legislature would not have specifically excluded municipalities from the coverage of RSA 466:19 and :20 had it desired to protect towns from dog liability, for "there would have been no occasion to." The absence of an express exclusion is therefore inconclusive.

██  Moreover, it is a rule of statutory construction "that the general words of a statute do not include the government or affect its rights unless the construction be clear and indisputable upon the text of the act." *Nardone v. United States*, 302 U.S. 379, 383 (1937); *see Intracoastal Transp., Inc. v. Decatur County*, 482 F.2d 361 (5th Cir. 1973); 3 C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 62.01, at 63 (4th ed. 1974). This rule is of particular applicability where inclusion of the governmental unit "would work obvious absurdity as, for example, the application of a speed law to a policeman pursuing a criminal or the driver of fire engine responding to an alarm." *Nardone v. United States*, 302 U.S. at 384.

■ The examples cited by the Supreme Court in the *Nardone* opinion are, we think, analogous to the situation at hand. A peace officer is privileged to use *reasonable* force, albeit through the assistance of a police dog, against another who "by his conduct knowingly causes the [officer] reasonably to believe that he is intentionally impeding the privileged arrest or recapture of a third person." RESTATEMENT (SECOND) OF TORTS § 138 (1965); *cf.* RSA 627:5 (criminal defense of justification for use of physical force in law enforcement).

Peàce officers are, by legal compulsion, "conservators of the peace." *State v. Grant*, 107 N.H. 1, 2, 216 A.2d 790, 791 (1966). Consequently, they must be allowed a degree of discretion in selecting instrumentalities for law enforcement. We agree with the trial court that "there are probably a number of situations in which it would be regarded today as reasonable for the police to use police dogs in the performance of their official duties."

■ Based upon our interpretation of the statutes, we hold that the trial court correctly ruled that the plaintiff could not bring her action under RSA 466:19 and :20. *Cf. McIntire v. Plaisted*, 57 N.H. 606 (1876) (availability of negligence action where statutory cause of action under predecessor of RSA 466:19 unavailable).

■■ The plaintiff's second contention is that the trial court twice erroneously instructed the jury regarding the peace officer's privileged use of reasonable force. The first instruction, summarized, was that in attempting to terminate breaches of the peace, a peace officer "is privileged to use force against another" if the officer's use of force, as well as his belief in its necessity, is reasonable and "not intended or likely to cause death or serious bodily harm." This instruction is essentially compatible with Restatement (Second) of Torts § 141 (1965), and does not in any material way misstate the law of New Hampshire. The plaintiff argues that the language of the instruction goes beyond the peace officer's justification defense provided for in RSA 627:5, and that it is therefore erroneous. We disagree. RSA 627:5 deals with a criminal defense rather than with a tort privilege. Although the substance of that statute is of some guidance in civil proceedings, it is not directly applicable. *Accord, Hatfield v. Gracen*, 279 Ore. 303, 307, 567 P.2d 546, 549 (1977).

The second instruction complained of was a quotation of Restatement (Second) of Torts § 138 (1965), to which we referred earlier in this opinion as the law of this State. We hold that no error was committed by the trial court relative to its instruction on the privileged use of reasonable force by peace officers.

The plaintiff next contends that the court erred in admitting certain testimony of Officer Jardine concerning an unrelated routine traffic stop in which his life had been threatened by the driver and occupant of a car he had stopped. We can find no error in the court's admission of the testimony. Plaintiff's counsel, during his direct examination of Officer Jardine, brought out the following testimony from him:

Q. And so going through your mind you felt Mrs. Blais was going to come back and come at you from behind, or something like that?

A. It's no telling what she could have done or what she could have had when she was coming out . . . .

Q. What do you mean, could have had?

A. Could have taken out of the vehicle.

Q. Like what?

A. A weapon, tire iron, screwdriver, anything.

Q. Did you really think at the time, Officer Jardine, that this woman was going to come out with a weapon?

A. I had no idea what she was going to come out with. All I wanted was for her to stay in the vehicle.

The plaintiff having put the officer's then-existing state of mind in issue, she cannot now complain of further testimony that went in on cross-examination to explain the basis for that state of mind. *See generally Allen v. State*, 110 N.H. 42, 48, 260 A.2d 454, 459 (1969); *Lafferty v. Houlihan*, 81 N.H. 67, 121 A. 92 (1923).

The plaintiff's final contention relates to the court's denial of her motion for mistrial made after the second of two references to criminal proceedings brought against her husband for his conduct on the night in question. The initial reference to the collateral proceedings against Mr. Blais occurred during defendant's cross-examination of Officer Jardine, when defense counsel asked: "Now, you were also asked [by plaintiff's counsel] if you had made previous statements about this case, and I would ask you: were you a witness at the criminal proceedings against Mr. Blais?" After lodging an objection plaintiff's counsel agreed to a curing instruction and did not further pursue the matter. As to this mention of the other proceeding, therefore, the plaintiff's objection is deemed waived. *Barton v. City of*

*Manchester*, 110 N.H. 494, 272 A.2d 612 (1970). The trial court scrupulously guarded plaintiff's position by ordering defense counsel to cease all mention of the "criminal" nature of the prior proceeding and by immediately cautioning the jury that "no criminal proceeding specifically has ever been brought against Mrs. Blais."

The motion for mistrial came after a different police officer mentioned that he had not seen plaintiff's husband since the incident, except at "the court trial." Plaintiff's counsel objected and the court struck the answer and repeated the cautionary instruction. At the bench, plaintiff's counsel moved for a mistrial on the ground of prejudice, and the court denied the motion over exception.

We hold that the trial court's denial of the plaintiff's motion for mistrial was proper. By the time of the motion the jury was undoubtedly aware of collateral proceedings involving Mr. Blais. But the court did all that was required in the circumstances by twice instructing the jury that Mr. Blais' problems with the law could not be imputed to the plaintiff. *Emerson v. Cobb*, 88 N.H. 199, 201, 186 A. 12, 13 (1936); *see Mason v. Knox*, 66 N.H. 545, 546, 27 A. 305, 305 (1891). Any prejudice or error resulting from mention of collateral proceedings involving plaintiff's husband was overcome by the trial court's careful handling of the situation.

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.